**Philip A. SYVERSON, Plaintiff–Appellant,**

v.

**CONSOLIDATED RAIL CORPORATION, Defendant–Appellee.**

**No. 820, Docket 93–7710.**

United States Court of Appeals, Second Circuit.

Argued Jan. 27, 1994.

Decided March 25, 1994.

Marc H. Goldberg, Albany, NY (McClung, Peters and Simon), for plaintiff-appellant.

G. Kimball Williams, Albany, NY (Paul E. Scanlan, McNamee, Lochner, Titus & Williams, of counsel), for defendant-appellee.

Before: WALKER, JACOBS, Circuit Judges, and DALY, District Judge.*

* Honorable T.F. Gilroy Daly, of the United States District Court for the District of Connecticut, sitting by designation.

JACOBS, Circuit Judge:

Plaintiff-appellant Philip Syverson brought an action under the Federal Employers' Liability Act ("FELA"), 45 U.S.C. §§ 51–60 (1986), charging that allegedly unsafe conditions at his employer's railyard contributed to an incident in which Syverson, sitting in his parked car, was attacked by a knife-wielding stranger. The district court granted summary judgment in favor of Syverson's employer, Consolidated Rail Corporation ("Conrail"), holding that a sudden violent attack by a crazed trespasser was inherently unforeseeable, and that Conrail could not be deemed negligent under any view of the facts presented. We hold that, under FELA and the case law construing it, the common-law negligence standards of foreseeability and causation normally applied in summary judgment are substantially diluted, and that Syverson's showing in opposition to summary judgment, though slight, was sufficient to preserve his opportunity to present this case to a jury. We therefore reverse and remand.

## Background

We review a grant of summary judgment de novo. Miner v. City of Glens Falls, 999 F.2d 655, 661 (2d Cir.1993). Because the facts are to be construed in the light most favorable to the non-moving party, where facts are in dispute we will adopt Syverson's version of what transpired. Revak v. SEC Realty Corp., 18 F.3d 81, 84 (2d Cir.1994).

Philip Syverson was employed by Conrail as a dispatcher. In June 1991, he transferred to the Conrail territory that stretches west from Boston to near Palmer, Massachusetts, and that includes the Framingham railyard. In order to qualify for his new assignment, Syverson was required to physically inspect the railroad's properties in the territory. On July 11, 1991, he was riding the rails near the Framingham railyard in a high rail vehicle (an on-the-road vehicle equipped with special wheels) when it malfunctioned. On the way back to the repair garage, the driver dropped Syverson off at his car, which was parked in a remote area of the yard. Syverson decided to look for the yardmaster

in order to discuss changes in the yard since Syverson's last visit to Framingham some eight years earlier. He drove through to a group of trailers that constitute the yard office. Seeing no vehicles parked in the vicinity, Syverson drove past the trailers to a stand of tall trees where he parked his car in the shade to complete some paperwork for his supervisor.

As he was doing the paperwork in his car, he noticed a stranger standing at his open driver's door window. After a brief conversation, the stranger turned to walk away, and Syverson resumed his paperwork. Moments later the stranger reappeared and, without warning or provocation, began to stab Syverson with a knife. Syverson suffered numerous stab wounds and at least one bite wound. Eventually, Syverson managed to escape his attacker and ran to the trailers yelling for help, while the assailant took the opportunity to leave the scene. The Framingham Police later arrested a local man, who was tried and convicted for the assault.

Syverson filed a civil complaint against Conrail in the United States District Court for the Northern District of New York, alleging that Conrail was negligent under FELA in failing to maintain a safe workplace. Specifically, Syverson alleged that an area in and around the yard known locally as the "weeds" was a known encampment for tramps, alcoholics, drug addicts and suspicious persons; that Conrail was aware of several criminal incidents involving these persons; that Conrail failed to rid its property of them; and that Conrail thereby failed to ensure safe working conditions.

Conrail's motion for summary judgment argued that the attack on Syverson was unforeseeable, and therefore that Conrail could not have been negligent in failing to safeguard against it. The district court agreed, finding that, even if Conrail knew that vagrants were congregating in and around its property, "knowledge of these facts could not have put Conrail on notice of the particular danger that one of its employees at the Yard might be attacked by an unknown and unprovoked individual.... [A]t best, and as a matter of law, such facts could have only foretold the possible presence of a trespasser

at the Yard." The district court granted Conrail's motion for summary judgment, and dismissed Syverson's FELA claim.

The district court recognized that under FELA the jury ordinarily decides whether or not an employer provided an adequately safe workplace. In this case, however, the district court found that "only one reasonable conclusion can be determined" from the facts: that Conrail was not negligent. Under FELA, however, the ordinary standards for negligence are relaxed so that an employer subject to this statute is potentially responsible for risks that would be too remote to support liability under common law. Because we find that a jury might resolve disputed material facts in a way that could provide a basis for FELA liability, we reverse the district court's grant of summary judgment and remand for further proceedings.

### Discussion

The district court dismissed the claim because Syverson could not show that Conrail should have foreseen an attack on Syverson by this trespasser. Without contesting the essentially freakish character of the attack, Syverson argues that the district court's ruling on foreseeability adopted a level of particularity at odds with the case law construing FELA. According to Syverson, it does not matter whether the railroad could anticipate that a particular trespasser would stab and bite the plaintiff; all Syverson need show to reach a jury is that Conrail should have foreseen that the presence of vagrants and other trespassers on its property created an inherently unsafe condition for its employees. Because Conrail knew of this dangerous condition and failed to ameliorate it, he argues, Conrail should be held liable under FELA for his injuries.

■ FELA provides that:

Every common carrier by railroad ... shall be liable in damages to any person suffering injury while he is employed by such carrier ... for such injury ... resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier. . . .

45 U.S.C. § 51. A railroad may be liable under FELA for failure to provide a safe workplace "when it knows or should know of a potential hazard in the workplace, yet fails to exercise reasonable care to inform and protect its employees." *Gallose v. Long Island R.R.*, 878 F.2d 80, 84–85 (2d Cir.1989). Reasonable care is determined in light of whether or not a particular danger was foreseeable. *See Gallick v. Baltimore & O.R.R.*, 372 U.S. 108, 117, 83 S.Ct. 659, 665, 9 L.Ed.2d 618 (1963) ("reasonable foreseeability of harm is an essential ingredient of [FELA] negligence."). This is a fact issue, and, "[a]s with all factual issues under the FELA, the right of the jury to pass on this issue must be liberally construed." *Gallose*, 878 F.2d at 85. "Under this statute the test of a jury case is simply whether the proofs justify with reason the conclusion that employer negligence played *any* part, *even the slightest*, in producing the injury or death for which damages are sought." *Burns v. Penn Central Co.*, 519 F.2d 512, 514 (2d Cir.1975) (quoting *Rogers v. Missouri Pacific R.R.*, 352 U.S. 500, 506, 77 S.Ct. 443, 448, 1 L.Ed.2d 493 (1957)) (emphasis in *Burns*). In short, on a summary judgment motion under FELA, the standard of fault springs from statute as opposed to common-law analysis.

In *Burns,* the brakeman on a commuter railroad was shot by a sniper as the train passed through upper Manhattan. In the ten months prior to the shooting, four passenger trains had been stoned in that neighborhood. On the day in question, the brakeman was standing outside the car in the doorway to prevent passengers from attempting to disembark before the train came to a halt. The brakeman was killed by a rifle shot as the train approached the 125th Street station. 519 F.2d at 513. The district court in *Burns* ruled that the railroad could not have been negligent because such an incident of random violence was unforeseeable absent similar shooting incidents in the recent past. On appeal, this Court concluded that the singular character of the event did not warrant taking the case from the jury: "although the criminal nature of the act causing injury may well bear on the jury's assessment of the defendant's ability to foresee

that injury of this type might result from its acts or omissions, a jury is not constrained to find that harm caused by a third party's unlawful conduct was not foreseeable." *Id.* at 514.

In the instant appeal, it is undisputed that Conrail knew that the "weeds" area was a magnet for vagrants, many of whom were alcoholics or drug addicts. Syverson presented depositions of several Conrail police officers to support his contention that "[p]eople known as the 'weed' people slept, sat, drank, panhandled, and breached the peace within the Framingham yard since about 1977." These officers also testified to the safety concerns presented by these conditions. For example, Conrail Officer Robert D. Cox testified that "any time you have an unlit situation, unlit area where there is transients, vagrants, a potential for drug use, or crime of any sort, [trouble is] prevalent. That goes without saying, you know." Several of these officers also testified that Conrail had been unresponsive when they voiced concern that more staffing was needed to police the Framingham yard. Moreover, Syverson presented evidence of past criminal activity at the yard, chiefly incidents of theft, vandalism and breaking into box cars. Ten months before the assault on Syverson, another Conrail employee confronted a trespasser who was apparently trying to steal railroad property, and who menaced the railroad worker with a metal pipe. Thin as this evidence is, it is enough under FELA to raise a jury question as to whether the railroad exercised reasonable care, given what was reasonably foreseeable, to furnish Syverson with a safe workplace.

The Supreme Court in *Gallick* framed the question that a court must ask in deciding whether a FELA case should go to a jury: whether there is "enough [evidence] to justify a jury's determination that employer negligence had played *any* role in producing the harm." 372 U.S. at 116, 83 S.Ct. at 664. Conrail vigorously argues that the trespasser who attacked Syverson was traversing the property and may have had no connection with the people living and loitering in the weeds area, and that in any event no one could have foreseen the violence and harm

that the trespasser inflicted. Despite Conrail's contentions, *Gallick* offers some instructive analytical parallels and illustrates how little suffices under this statute. In that case, the railroad had permitted a fetid pool of water to exist on its grounds. The pool of water attracted a variety of vermin and insects. An employee bitten by an insect in the vicinity of this pool suffered a reaction so severe as to require the amputation of his leg. Foreseeability was in issue because there was no evidence that the insect that stung this employee was hatched from the stagnant pool or was attracted there by it, and because the medical consequence was highly unusual. The trial court awarded damages, but the state appeals court reversed, finding an insufficient causal connection to permit a jury verdict. The Supreme Court reversed and remanded, holding that the jury verdict was sustainable under prior cases construing FELA. Since the railroad "knew that the accumulation of the pool of water would attract bugs and vermin to the area—it is clear that the jury concluded that respondent should have realized the increased likelihood of an insect's biting petitioner while he was working in the vicinity of the pool." 372 U.S. at 118–119, 83 S.Ct. at 666. The plaintiff in *Gallick* was therefore not required to demonstrate specifically that the agent of harm issued from the untended condition on the railroad's property, or that the untended condition could be expected to result in so terrible a harm. Conrail can fare no better on this appeal by urging that the trespasser did not come from the weeds area and that no one could reasonably foresee that a trespasser would turn homicidal.

The district court dismissed Syverson's claim because he offered no evidence that the railroad should have foreseen "the particular danger that one of its employees at the Yard might be attacked by an unknown and unprovoked individual." The district court pointed out that not even Syverson, who spoke to the assailant before the attack, had any "reason to anticipate the danger that this man posed, or that an assault was about to occur." We addressed, and rejected, a similar argument in *Gallose v. Long Island R.R.*, 878 F.2d 80 (2d Cir.1989). In *Gallose*, a dog brought to work by one of the railroad's employees at-

828

tacked another employee. The issue presented to this Court was whether the plaintiff was required to show that the railroad knew or should have known that the dog had vicious propensities. We rejected that claim, holding that the appropriate question was simply whether the railroad knew or should have known there was a large dog on the premises, "and if so, whether an employer using reasonable care should have investigated further or taken other steps to inform and protect its employees." 878 F.2d at 85. The opinion in *Gallose* emphasizes that the plaintiff was "proceeding on his negligence claim, not under New York law, but under the FELA, a process 'significantly different from the ordinary common-law negligence action'...." *Id.* at 86 (quoting *Rogers v. Missouri Pacific R. Co.*, 352 U.S. 500, 509–510, 77 S.Ct. 443, 450–51, 1 L.Ed.2d 493 (1957)).

In granting summary judgment to Conrail, the district court evidently applied a standard that would have been quite appropriate had this been a negligence action at common law. But, "under a statute where the tortfeasor is liable for death or injuries in which his negligence played any part, even the slightest," *Gallick*, 372 U.S. at 120–21, 83 S.Ct. at 667 (internal quotations and citation omitted), the case must not be dismissed at the summary judgment phase unless there is absolutely no reasonable basis for a jury to find for the plaintiff. Conrail's summary judgment motion did not meet that standard.

## Conclusion

For the foregoing reasons, we reverse the grant of summary judgment in favor of Conrail, and remand for further proceedings consistent with this opinion.