**Lena MULLAHON, Administratrix of the Estate of Glenn Chiquito, deceased, Plaintiff–Appellant,**

v.

**UNION PACIFIC RAILROAD, a Utah corporation, Defendant–Appellee.**

No. 93–16173.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 15, 1994.

Decided Sept. 6, 1995.

Joseph I. Cronin, Minden, NV, for plaintiff-appellant.

Suellen Fulstone, Woodburn, Wedge & Jeppson, Reno, NV, for defendant-appellee.

Before: HUG, CANBY, and KLEINFELD, Circuit Judges.

HUG, Circuit Judge:

Plaintiff–Appellant Lena Mullahon brought an action under the Federal Employers Liability Act ("FELA"), 45 U.S.C. § 51, alleging that Defendant–Appellee Union Pacific Railroad (the "Railroad") is liable for the death of an employee, Glenn Chiquito, who was murdered by a fellow employee, Roberto Perez. Mullahon, administratrix of Chiquito's estate, appeals the district court's grant of summary judgment in favor of the Railroad. The district court found that Mullahon could not hold the Railroad liable for Chiquito's death under a theory of *respondeat superior* because the murder was not committed in furtherance of the Railroad's business. It also found that Mullahon could not succeed under a direct negligence theory because no supervisor of the Railroad could have reasonably foreseen the murder.

We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm in part and reverse in part. We agree that Mullahon cannot proceed under *respondeat superior* for Perez's act of shooting, but hold that she has raised a genuine issue of material fact as to the Railroad's negligence by the act of another employee. Under the liberal evidentiary standards applicable in FELA cases, Mullahon has provided sufficient evidence to warrant a trial on the issue of the employer's negligence. Under the FELA, the Railroad is liable for the negligence of its employees regardless of their rank. The evidence establishes a genuine issue of material fact as to whether Wilfredo Alvarez, a Railroad employee and friend of Perez, had sufficient notice of the attack that a reasonable jury could find that Alvarez was negligent in failing to warn his supervisor of the potential danger and that his failure to warn was a contributing cause of Chiquito's death.

## FACTS

The extensive discovery revealed the following facts that were reviewed in considering the motion for summary judgment. Glenn Chiquito, an employee of Union Pacific Railroad, was murdered on the job by another Railroad employee, Roberto Perez. Perez arrived at the job site one Monday morning and chased Chiquito on foot across the Black Rock Desert, all the while shooting at him with an assault rifle and eventually killing him. In the same incident, Perez shot and killed another Railroad employee, Roland Morgan. Perez was a bus driver for the Railroad, and Chiquito was his foreman. Morgan was a truck driver in another "gang." Perez pled guilty to two counts of first-degree murder. He was sentenced to two consecutive terms of life imprisonment.

Prior to the murder, Perez committed several acts of insubordination, in which he refused to perform his job. Perez failed to provide his gang with water, he refused to do work other than drive the bus, and the Friday afternoon before the murder, he refused to even drive the bus. A month before the shooting, Perez travelled to the Railroad's headquarters in Salt Lake City to complain to the Director of Track Maintenance, Dale Jones, that Chiquito was after him and worked him too hard. Jones' assistant, Mike Kerwood, Manager of Track Programs, travelled to the job site near Gerlach, Nevada, to investigate. He found that Perez's complaints were unfounded.

Perez also had a number of disputes with his co-workers. He and Morgan argued over cleaning the stove in the bunk car and using the television. During a dispute over a union strike about a month before the shooting, Perez threatened to fight Morgan, but Morgan refused. Morgan said that a fight with Perez was not worth losing his job. Perez also had a dispute with a cook, in which he kicked the door of the meal car on a rainy day because he wanted it opened early. He and the cook exchanged words, and Perez did his own cooking from then on. Management was aware of the insubordination, the dispute with Chiquito, and the dispute with the cook, and several nonmanagement employees were aware of the dispute with Morgan.

On weekends, Perez lived in Pocatello, Idaho and usually travelled to and from work with a fellow nonmanagement employee, Wil-

fredo Alvarez. Alvarez was a laborer on one of the "gangs." According to an affidavit by Nevada State Investigator, P.K. O'Neill, who interviewed Alvarez, Alvarez had known for one to two years that Perez owned a mini-fourteen assault rifle. He occasionally had it with him when they were travelling, and would leave it in his vehicle while at the job site. This was a violation of Railroad regulations.[1] Alvarez never reported the rifle, which was also a violation of Railroad regulations.[2] Alvarez reported to O'Neill that he had seen the gun in Perez's car the night before the shooting. Alvarez also admitted to the officer that a week to 10 days before the shooting, he had witnessed Perez's personality change from exuberant and outgoing to reclusive and quiet, and that he had witnessed verbal confrontations between Perez and Native American co-workers almost resulting in physical altercations (Chiquito was Native American). Another Railroad bus driver, Rigoberto Tovar, stated in a deposition that he heard Alvarez say that he knew what Perez's plan was and tried to talk him out of it.

Perez didn't show up for roll call the Monday of the murders, and when a track supervisor, Marc Rubino, asked Alvarez about Perez's whereabouts, Alvarez responded that "he was around." Later that morning, Alvarez admitted to Rubino that the night before, Perez had told Alvarez that "something bad was going to happen tomorrow" and had asked Alvarez to "tell my wife that the will is in the bank and to take the kids to my friend's house." But Alvarez did not mention to Rubino that Perez had an assault rifle.

From here, many of the facts are in dispute. Rubino testified at Perez's disciplinary hearing that his first thought was that Perez was going to commit suicide. Later, in a deposition, Rubino claimed that he immediately tried to contact Chiquito on the radio to warn him. The parties dispute whether Rubino in fact tried to warn Chiquito, and whether, if he did, his intention was to warn Chiquito to watch out for his own safety, or to watch out for the safety of Perez. In either case, Rubino then located another track supervisor, Carlos Torres, and told him that "something was going on with Perez." Appellant claims that Rubino contacted Torres to warn him that Perez might be after him. Appellee claims that Rubino gave Torres only a general warning, and that the more specific warning came from someone else, after Morgan and Chiquito were shot. Whatever the content of the warning, Rubino testified that about five minutes later, Edwin Ferris, a section foreman, either came in or radioed in and told them to get the "Fight for Life" helicopter because something had happened with the men on the gang. Rubino then got on the radio and called for someone on the gang to find out what had happened. Walt Owens answered and said Perez was out with a gun and was shooting. Morgan had already been shot at that time, and Chiquito was being chased through the desert. Owens gave Rubino a blow-by-blow over the radio: Chiquito went down; he was up again and running; Perez was standing over him. Around the same time, Rubino got on the radio with Dale Jones and told him what was happening. Then Owens told Rubino that Perez had taken off in the mechanic's truck. At that point, Rubino got in

1. **603. WEAPONS:** Employees are prohibited from having firearms or other deadly weapons, including knives with a blade in excess of three inches, in their possession while on duty or on Company property except those authorized to have them in the performance of their duties or those given special permission by the superintendent or other designated officer.
Union Pacific Railroad, *General Code of Operating Rules*, 2d ed. (effective Oct. 29, 1989); *see also Safety, Radio and General Rules for All Employees*, Form 7908 (Rev. Oct. 1989).

2. **General Rules**
D. Employees must cooperate and assist in carrying out the rules and instructions, and must promptly report to the proper officer any violation of the rules or instructions, any condition or practice which may imperil the safety of trains, passengers or employees, and any misconduct or negligence affecting the interest of the Company....
....
**621. FURNISHING INFORMATION:** Employees must not withhold information, or fail to report all the facts, regarding irregularities, accidents, personal injuries or rule violations to officers authorized to receive such information.
Union Pacific Railroad, *General Code of Operating Rules*, 2d ed. (effective Oct. 29, 1989); *see also Safety, Radio and General Rules for All Employees*, Form 7908 (Rev. Oct. 1989).

his car and headed toward Reno, flagged down a policeman, and went with the police back to the work site. Chiquito was dead and Morgan was taken to the hospital, where he died a week later.

## DISCUSSION

### I. Standard of Review

■■■ We review *de novo* a district court's denial of a motion for summary judgment. *Jesinger v. Nevada Fed. Credit Union,* 24 F.3d 1127, 1130 (9th Cir.1994). The appellate court must determine, viewing the evidence in the light most favorable to the nonmoving party, whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law. *Id.*

### II. Corporate Liability Under FELA

■■■ Under FELA, an employee can hold an employer liable for intentional or criminal acts by fellow employees under either a *respondeat superior* or a direct negligence theory of liability:

> Under the theory of *respondeat superior,* an employer is liable for the intentional assaults committed by its employee in furtherance of the employer's business. Under the theory of direct negligence, an employer is liable if it fails to prevent reasonably foreseeable danger to an employee from intentional or criminal misconduct.

*Taylor v. Burlington Northern R.R.,* 787 F.2d 1309, 1314–15 (9th Cir.1986) (citing *Harrison v. Missouri Pac. R.R.,* 372 U.S. 248, 83 S.Ct. 690, 9 L.Ed.2d 711 (1963) (per curiam)) (other citations omitted). The term "direct negligence" can be misleading. As the A.L.R. explains, "the term 'direct negligence' actually refers to some act of negligence other than the commission of the tort by which the injuries were immediately inflicted." E.L. Kellett, Annotation, *Liability Under Federal Employers' Liability Act for Intentional Tort,* 8 A.L.R.3d 442, 446 (1966). Thus, even "direct negligence" involves an element of *respondeat superior,* because the

negligent act of some employee other than the intentional tortfeasor is attributed to the Railroad as employer.

■■■ The district court was correct to dismiss on summary judgment Mullahon's FELA claim to the extent that it was based on a *respondeat superior* theory of liability for the act of shooting. Perez's murder of his foreman was not in furtherance of the Railroad's business. That the murder occurred at the work site, or was committed as revenge for being worked too hard, is not sufficient evidence that it furthered the employer's interests. *See Brooks v. Washington Terminal Co.,* 593 F.2d 1285, 1288–89 (D.C.Cir.), *cert. denied,* 442 U.S. 910, 99 S.Ct. 2823, 61 L.Ed.2d 275 (1979) (assailant not acting in furtherance of employer's interest where motivated by revenge).

But the district court, nonetheless, erred in dismissing Mullahon's negligence claim because Mullahon has raised a genuine issue of material fact as to whether another Railroad employee's negligence was a contributing cause of Chiquito's death. As we detail in the next section, while there may not be sufficient evidence that any management or supervisory employee was negligent with respect to Chiquito's death, there is sufficient evidence to raise a jury question as to whether a nonmanagement employee, Alvarez, was negligent and whether that negligence contributed to Chiquito's death.

■■■ We, thus, reverse the district court's grant of summary judgment because, under FELA, an employer is liable for the negligence of its employees, regardless of rank, and regardless of whether the immediate cause of the harm was intentional. Under FELA, an employer is liable for "the negligence of any of the officers, agents, or employees of such carrier." 45 U.S.C. § 54. By abrogating the fellow servant rule,[3] Congress "plac[ed] the negligence of a co-employee upon the same basis as the negligence of the employer." *Chesapeake & Ohio Ry. v. De Atley,* 241 U.S. 310, 313, 36 S.Ct. 564, 565, 60 L.Ed. 1016 (1916); *see also Boldt v. Penn-*

---

**3.** Under the fellow servant rule, "an employer is not liable for injuries to an employee incurred solely as a result of the negligence of a fellow

employee while engaged in the common employment." 53 Am.Jur.2d *Master and Servant* § 275 (1970).

*sylvania R.R.*, 245 U.S. 441, 445, 38 S.Ct. 139, 140, 62 L.Ed. 385 (1918) ("In cases within the purview of the [FELA] statute the carrier is no longer shielded by the fellow-servant rule, but must answer for an employee's negligence as well as for that of an officer or agent."); *San Pedro, Los Angeles & Salt Lake R.R. v. Brown*, 258 F. 806, 807–08 (9th Cir.1919) (same). Congress' purpose in treating the negligence of an employee as the negligence of the employer was explained by the Supreme Court in *Sinkler v. Missouri Pac. R.R.*:

> a railroad worker may recover from his employer for an injury caused in whole or in part by a fellow worker, not because the employer is himself to blame, but because justice demands that one who gives his labor to the furtherance of the enterprise should be assured that all combining their exertions with him in the common pursuit will conduct themselves in all respects with sufficient care that his safety while doing his part will not be endangered. If this standard is not met and injury results, the worker is compensated in damages.

356 U.S. 326, 330, 78 S.Ct. 758, 762, 2 L.Ed.2d 799 (1958). The same considerations dictate an employer's liability where an employee's negligence leads to a criminal act. "[T]he fact that 'the foreseeable danger was from intentional or criminal misconduct is irrelevant; respondent nonetheless had a duty to make reasonable provision against it.' " *Harrison v. Missouri Pac. R.R.*, 372 U.S. 248, 249, 83 S.Ct. 690, 9 L.Ed.2d 711 (1963) (quoting *Lillie v. Thompson*, 332 U.S. 459, 462, 68 S.Ct. 140, 142, 92 L.Ed. 73 (1947)).

The Seventh Circuit, in *Lancaster v. Norfolk & Western Ry.*, noted the dearth of authority on the question of what level of employee must be negligent before the employer can be held liable for an intentional tort under FELA on a direct negligence theory. 773 F.2d 807, 820 (1985), *cert. denied*, 480 U.S. 945, 107 S.Ct. 1602, 94 L.Ed.2d 788 (1987) (upholding employer liability on the basis of *respondeat superior*). Other courts have decided FELA cases under the direct negligence branch of intentional tort without reference to corporate hierarchy, likely because FELA's abrogation of the fellow servant doctrine for negligence cases is so clearly controlling. *See, e.g., Smith v. National R.R. Passenger Corp.*, 856 F.2d 467, 469–70 (2d Cir.1988) (holding that negligence of unspecified employees in failing to report assailant-employee's previous misconduct to supervisor raised jury question as to employer's liability for the assault); *McCann v. Smith*, 370 F.2d 323, 324 (2d Cir.1966) (possibility that a train porter was negligent in his duty to guard the bunk room against "undesirables," and that this negligence led to an assault, raised a jury question as to the employer's liability for the assault); *cf. Green v. River Terminal Ry.*, 763 F.2d 805, 809 (6th Cir.1985) (upholding no employer liability where assault was not foreseeable to either crew member, brakeman, or engineer); *Brooks v. Washington Terminal Co.*, 593 F.2d 1285, 1289 n. 6 (D.C.Cir.) (finding no employer liability where not reasonably foreseeable that assistant foreman's inaction would have led to assault), *cert. denied*, 442 U.S. 910, 99 S.Ct. 2823, 61 L.Ed.2d 275 (1979); *Taylor v. Missouri Pac. R.R.*, 510 S.W.2d 735, 737–38 (Mo.App.1974) (holding that to recover damages, plaintiff must show that fellow crew member negligently failed to report assailant's destruction of vending machine prior to assaulting plaintiff, and that his negligence led to assault).

■ To survive summary judgment, Mullahon must offer sufficient evidence of both negligence and causation by any railroad employee. *See Rogers v. Missouri Pac. R.R.*, 352 U.S. 500, 506–07, 77 S.Ct. 443, 448–49, 1 L.Ed.2d 493 (1957) ("Judicial appraisal of the proofs to determine whether a jury question is presented is narrowly limited to the single inquiry whether, with reason, the conclusion may be drawn that negligence of the employer played any part at all in the injury."). But she need not show that it was a management or supervisory employee who was negligent.

### III. *FELA Evidentiary Standard*

■ The standard for receiving a jury trial is less stringent in FELA cases than in common law tort cases:

> Although federal courts have generally rejected the "scintilla rule" that any evidence

supporting a tort claim raises a jury question, courts have applied a rule very much like the "scintilla rule" to FELA cases. In FELA cases, "it is only necessary that the jury's conclusion be one which is not outside the possibility of reason on the facts and circumstances shown."

*Mendoza v. Southern Pac. Transp. Co.,* 733 F.2d 631, 633 (9th Cir.1984) (citing *Rogers v. Missouri Pac. R.R.,* 352 U.S. 500, 77 S.Ct. 443, 1 L.Ed.2d 493 (1957)) (other citations omitted). "By enacting FELA, Congress wanted to 'secure jury determinations in a larger proportion of cases than would be true of ordinary common law actions.' Jury trials were supposed to be part of the FELA remedy." *Mendoza,* 733 F.2d at 633 (citations omitted). This relaxed standard applies to both negligence and causation determinations. *Pierce v. Southern Pac. Transp. Co.,* 823 F.2d 1366, 1370 (9th Cir.1987) ("A reviewing court must uphold a verdict even if it finds only 'slight' or 'minimal' facts to support a jury's finding of negligence."); *Oglesby v. Southern Pac. Transp. Co.,* 6 F.3d 603, 607 (9th Cir.1993) (" 'Under [the FELA] the test of a jury case is simply whether the proofs justify with reason the conclusion that employer negligence played any part, even the slightest, in producing the injury.' ") (quoting *Rogers,* 352 U.S. at 506, 77 S.Ct. at 448) (alteration in original).

■■■ Under the minimal FELA standard for raising a jury question, it is "not outside the possibility of reason" that Alvarez had notice of the attack and was negligent in failing to report it earlier. *See Mendoza,* 733 F.2d at 633 (noting the jury's broad power to engage in inferences in FELA cases); *Pierce,* 823 F.2d at 1370 (same). Alvarez had a duty, under Railroad policy, to report not only the immediate possibility of violence, but the fact that Perez carried an assault rifle onto company property in violation of company rules.

A jury could find that the attack was reasonably foreseeable to the Railroad because Alvarez knew that Perez had a gun with him, Perez had been acting strangely for the past few weeks, he had been fighting with coworkers, and he had admitted to Alvarez that something bad would happen the next day

and that he had made provisions for the care of his children and the distribution of his assets. As of the morning of the shooting, Alvarez also knew that Perez was missing. Whether Alvarez or other Railroad employees suspected suicide or homicide is not controlling. " 'The test of foreseeability does not require that the negligent person should have been able to foresee the injury in the precise form in which it in fact occurred. Rather it is sufficient if the negligent person might reasonably have foreseen that *an* injury might occur.' " *Green v. River Terminal Ry.,* 763 F.2d 805, 808 (6th Cir.1985) (citation omitted); *see also Gallick v. Baltimore & Ohio R.R.,* 372 U.S. 108, 120, 83 S.Ct. 659, 666–67, 9 L.Ed.2d 618 (1963) (defendant "need not foresee the particular consequences of his negligent acts"); *Syverson v. Consol. Rail,* 19 F.3d 824, 827 (2d Cir.1994) (same); *McCracken v. Richmond, Fredericksburg & Potomac R.R.,* 240 F.2d 484, 487 (4th Cir.1957) ("the particular and exact manner of the accident need not be foreseen"). It is sufficient that a shooting with an assault rifle was foreseeable, not that the specific victim of the shooting was foreseeable. Thus, there is sufficient evidence to raise a genuine issue of fact as to the Railroad's negligence.

■■■ A jury could also find that the Railroad's negligence contributed to the cause of Chiquito's death. A jury could reasonably find that if Alvarez had followed company rules and supplied his supervisors with the knowledge he had about Perez, Chiquito's murder would have been averted. If Alvarez had reported that Perez carried an assault rifle, the Railroad could have confiscated the gun, watched Perez more closely, or fired Perez. More importantly, a jury could find that Alvarez should have reported the threat that led directly to Chiquito's murder as early as the night before the shooting. Even an hour's notice before the time that Alvarez was actually questioned about Perez's whereabouts and alerted his supervisors to Perez's absence could have saved Chiquito's life. Carlos Torres, a track supervisor, testified in a deposition that if he had received the information known to Alvarez earlier, he would not have let anyone go to work that day and

would have called the special agents to investigate.

We need not decide whether any of the other rule violations or arguable breaches of the duty of care by other employees, in combination with Alvarez's alleged breach, could give rise to liability. Our reversal of the summary judgment leaves these questions for the jury.

### CONCLUSION

Because Perez's murder of Chiquito was not in furtherance of Union Pacific Railroad's business, we affirm the district court's grant of summary judgment for the Railroad on the basis of *respondeat superior* for the shooting itself. But we otherwise reverse the district court's grant of summary judgment for the Railroad because there is a genuine issue of material fact as to whether, through the negligence of its other employees, the Railroad failed to prevent Chiquito's death.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**