500 S.E.2d 300

**Robert McGRAW, et al., Plaintiffs Below, Appellants,**

v.

**NORFOLK & WESTERN RAILWAY COMPANY, et al., Defendants Below, Appellees.**

No. 23996.

Supreme Court of Appeals of West Virginia.

Submitted Sept. 16, 1997.

Decided Dec. 15, 1997.

676

Richard M. Huhn, Blumentiel, Huhn, Woods & Adams, Columbus, OH, Norris Kantor, Katz, Kantor & Perkins, Bluefield, for Appellant.

Angela W. Konrad, Huddleston, Bolen, Beatty, Porter & Copen, Huntington, for Appellee Norfolk & Western Railway Company.

McHUGH, Justice.

This case is before this court upon the appeal of Robert McGraw who, while employed by appellee Norfolk & Western Railway Co. (hereinafter "appellee" or "railroad"), sustained injuries when he was struck by a non-railroad employee. Appellant instituted an action against the railroad under the Federal Employers' Liability Act, 45 U.S.C. § 51 (1939), alleging, *inter alia*, that it was negligent in failing to alleviate the known danger presented by the non-railroad employee and in failing to provide appellant with a reasonably safe place to work. By order dated May 2, 1996, the Circuit Court of Mingo County entered summary judgment in favor of the railroad. *See W.Va.R.Civ. P.* 56.

This Court has before it the petition for appeal, all matters of record and the briefs and argument of counsel. For reasons discussed herein, the order of the circuit court is reversed and this case is remanded.

## I.

### A.

On or about June 29, 1993, the railroad crossing located at Duty Branch Road in Ragland, Mingo County, became blocked by the appellee's railroad cars. On that date, appellant was working for the railroad as a brakeman and was riding a cut of empty coal cars[1] that were being delivered to a coal loadout facility located near the crossing. According to appellant, Clarence Ferrell, a non-railroad employee who has resided on Duty Branch Road since 1984, apparently became irate when he approached the blocked crossing. The Duty Branch Road crossing is the only access to Ferrell's home. Thus, whenever the crossing is blocked, it also blocks the road to Ferrell's home. Appellant testified that Ferrell got out of his truck, walked to the sidetracks, and angrily confronted him about blocking the crossing. Appellant claims that Ferrell struck him in the ribs, causing him to fall from the railroad car on which he was riding.[2] As a result of the fall, appellant sustained injuries which have prevented him from returning to work at the railroad.

### B.

The appellant instituted this action against the railroad, among others,[3] under the Federal Employers' Liability Act, 45 U.S.C. § 51 (1939) (hereinafter "FELA"). Appellant has alleged that the railroad knew or should have known of the danger to appellant presented by Ferrell in that "Ferrell had previously assaulted and/or threatened physical violence to other persons employed by [appellee], as well as other non-employees, at or about the same location where [appellant] was attacked." Appellant's complaint alleged further that the railroad "negligently failed to warn [appellant] of a serious danger which it knew or should have known existed at or about a known work location; [that] [the

railroad] negligently failed to take steps to alleviate the serious danger presented by [Ferrell] at or about a known work location; and [that] [the railroad] negligently failed to provide [appellant] with a reasonably safe place to work at or about a known work location."

The railroad filed a motion for summary judgment, which motion, following a hearing, was granted. In the order entered on May 2, 1996, the circuit court found, *inter alia*, that appellant failed to show that the railroad "knew or by reason of ordinary care could have known of any propensities toward violence by [Ferrell] and no facts were presented by [appellant] to establish that any official or supervisor of [appellee] prior to the incident ... were ever advised of any such propensities." The court concluded, as a matter of law, *inter alia*, that the railroad could not have foreseen in the exercise of reasonable care that Ferrell would commit an intentional battery (an independent and intervening act) on appellant.

## II.

■ This Court established in syllabus point one of *Painter v. Peavy*, 192 W.Va. 189, 451 S.E.2d 755 (1994), that "[a] circuit court's entry of summary judgment is reviewed *de novo.*"

■ A motion for summary judgment should be granted only when the moving party demonstrates that there is no genuine issue as to any material fact and that such party is entitled to judgment as a matter of law:

'A motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law.' Syllabus Point 3, *Aetna Casualty & Surety*

---

1. According to the testimony of railroad employee Bill L. Short, when coal cars are "cut," they are separated from the locomotives and are eventually pushed onto another railroad track.

2. We note that Ferrell denies that he struck appellant. However, for purposes of this appeal, the parties herein, McGraw and Norfolk & West-

ern have assumed that Ferrell did, in fact, physically assault appellant.

3. Also named as defendants were Ferrell, and AGIP Coal, Inc., the owner of the property on which the altercation occurred. Neither Ferrell nor AGIP Coal are parties to this appeal.

*Co. v. Federal Insurance Co. of New York,* 148 W.Va. 160, 133 S.E.2d 770 (1963).

Syl. pt. 1, *Andrick v. Town of Buckhannon,* 187 W.Va. 706, 421 S.E.2d 247 (1992).

 At the summary judgment stage, the circuit court's function is not " 'to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.' " *Williams v. Precision Coil, Inc.,* 194 W.Va. 52, 59, 459 S.E.2d 329, 336 (1995) (*quoting Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202, 212 (1986)). This Court must, therefore, draw any permissible inference from the underlying facts in the light most favorable to the nonmoving party. *Masinter v. WEBCO,* 164 W.Va. 241, 242, 262 S.E.2d 433, 435 (1980).

### III.

### A.

The Federal Employers' Liability Act,[4] 45 U.S.C. § 51 (1939), provides, in relevant part:

> Every common carrier by railroad while engaging in commerce ... shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce, or, in case of the death of such employee, to his or her personal representative ... for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier [.]

In enacting FELA, it was Congress' intention that it be a broad, remedial statute and, as such, should be given a liberal construction by courts. *Ackley v. Chicago and North Western Transp. Co.,* 820 F.2d 263, 266 (8th Cir.1987) (*citing Urie v. Thompson,* 337 U.S. 163, 180, 69 S.Ct. 1018, 1029, 93 L.Ed. 1282 (1949)). *See Gardner v. CSX Transporta-*tion, Inc.,* 201 W.Va. 489, 497, 498 S.E.2d 473, 481 (1997). Moreover, in considering the issues raised in this appeal, we are constrained to follow federal case law interpreting FELA. Federal and state courts have concurrent jurisdiction of claims brought under FELA. 45 U.S.C. § 56 (1948) ("The jurisdiction of the courts of the United States under this chapter shall be concurrent with that of the courts of the several States." *Id.,* in part.) In FELA claims, although "a state court may use procedural rules applicable to civil actions in the state court unless otherwise directed by the act, ... substantive issues concerning a claim under the [FELA] are determined by the provisions of the act and interpretative decisions of federal courts construing the [FELA][.]" *Chapman v. Union Pacific R.R.,* 237 Neb. 617, 467 N.W.2d 388, 393 (1991) (*citing, e.g., Monessen Southwestern R. Co. v. Morgan,* 486 U.S. 330, 108 S.Ct. 1837, 100 L.Ed.2d 349 (1988); *St. Louis Southwestern R. Co. v. Dickerson,* 470 U.S. 409, 105 S.Ct. 1347, 84 L.Ed.2d 303 (1985); *Chesapeake & Ohio R. Co. v. Kuhn,* 284 U.S. 44, 52 S.Ct. 45, 76 L.Ed. 157 (1931)). Indeed, only if federal law controls can FELA be given the "uniform application throughout the country essential to effectuate its purposes." *Dice v. Akron, Canton & Youngstown R. Co.,* 342 U.S. 359, 361, 72 S.Ct. 312, 314, 96 L.Ed. 398 (1952). *See Urie v. Thompson,* 337 U.S. at 174, 69 S.Ct. at 1027 ("What constitutes negligence for the [FELA] statute's purposes is a federal question, not varying in accordance with the differing conceptions of negligence applicable under state and local laws for other purposes. Federal decisional law formulating and applying the concept governs." *Id.* (footnote omitted)). Thus, " 'state courts are bound by interpretation of the ... [FELA] given by the federal courts.' " *Chapman,* 467 N.W.2d at 393 (internal citation omitted).

---

4. We note that under FELA, this Court must view the railroad's conduct as a whole, particularly "in a case such as this, where the several elements from which negligence might be inferred are so closely interwoven as to form a single pattern, and where each imparts characters to the others." *Blair v. B & O Railroad Co.,* 323 U.S. 600, 604, 65 S.Ct. 545, 547, 89 L.Ed. 490 (1945). *See Union Pacific R.R. Co. v. Hadley,* 246 U.S. 330, 332, 38 S.Ct. 318, 319, 62 L.Ed. 751 (1918) ("On the question of its negligence the defendant undertook to split up the charge into items mentioned in the declaration as constituent elements and to ask a ruling as to each. *But the whole may be greater than the sum of its parts,* and the Court was justified in leaving the general question to the jury if it thought that the defendant should not be allowed to take the bundle apart and break the sticks separately, and *if the defendant's conduct viewed as a whole warranted a finding of neglect."* (emphasis added)).

Accordingly, we hold that under the Federal Employers' Liability Act, 45 U.S.C. § 51 (1939), *inter alia*, "[e]very common carrier by railroad while engaging in commerce ... shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce, or, in case of the death of such employee, to his or her personal representative ... for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier[.]" Furthermore, pursuant to 45 U.S.C. § 56 (1948), federal and state courts have concurrent jurisdiction of claims brought under the Federal Employers' Liability Act, 45 U.S.C. § 51 (1939). Although a state court may use procedural rules applicable to civil actions in the state court unless otherwise directed by FELA, substantive issues under FELA are determined by the provisions of the statute and interpretative decisions of FELA given by the federal courts.

### B.

As this Court recently stated in *Gardner, supra,* a successful FELA plaintiff must " ' " "prove the traditional common law elements of negligence: duty, breach, foreseeability, and causation." ' " *Id.,* at 498, 498 S.E.2d at 482 (*quoting Adams v. CSX Transportation, Inc.,* 899 F.2d 536, 539 (6th Cir. 1990) and *Robert v. Consolidated Rail Corp.,* 832 F.2d 3, 6 (1st Cir.1987)). This statute imposes upon railroads a duty to provide its employees with a safe place to work. *Gardner,* at 498, 498 S.E.2d at 482. *See Brown v. CSX Transportation, Inc.,* 18 F.3d 245, 249 (4th Cir.1994); *Aparicio v. Norfolk & Western Ry. Co.,* 84 F.3d 803, 810 (6th Cir.1996); *Peyton v. St. Louis Southwestern Ry. Co.,* 962 F.2d 832, 833 (8th Cir.1992). "A railroad may be liable under FELA for failure to provide a safe workplace 'when it knows or should know of a potential hazard in the workplace, yet fails to exercise reasonable care to inform and protect its employees.' " *Syverson v. Consolidated Rail Corp.,* 19 F.3d 824, 826 (2d Cir.1994) (*quoting Gallose v. Long Island R.R.,* 878 F.2d 80, 84–85 (2d Cir.1989)). As this Court stated in *Crookham v. New York Central Railroad Co.,* 144 W.Va. 196, 204, 107 S.E.2d 516, 521, *cert.* *denied,* 361 U.S. 821, 80 S.Ct. 65, 4 L.Ed.2d 66 (1959), " '[t]he employer's liability is to be determined under the general rule which defines negligence as the lack of due care under the circumstances; or the failure to do what a reasonable and prudent man would ordinarily have done under the circumstances of the situation; or doing what such a person under the existing circumstances would not have done.' " (internal citation omitted). *See Gardner,* at 498, 498 S.E.2d at 482.

In a FELA action, an employer's duty of care "turns in a general sense on the reasonable foreseeability of harm." *Ackley,* 820 F.2d at 267 (*citing Gallick v. Baltimore & Ohio R.R.,* 372 U.S. 108, 117, 83 S.Ct. 659, 665, 9 L.Ed.2d 618 (1963)). *See Syverson,* 19 F.3d at 826. Thus, under FELA, to establish that a railroad breached its duty to provide its employees with a safe workplace, the plaintiff must show circumstances which a railroad, in the exercise of due care, could have reasonably foreseen as creating a potential for harm. *McGinn v. Burlington Northern R. Co.,* 102 F.3d 295, 300 (7th Cir.1996); *Peyton,* 962 F.2d at 833. *See Davis v. Burlington Northern, Inc.,* 541 F.2d 182, 185 (8th Cir.), *cert. denied,* 429 U.S. 1002, 97 S.Ct. 533, 50 L.Ed.2d 613 (1976) (*citing Gallick v. Baltimore & Ohio R.R.,* 372 U.S. at 117, 83 S.Ct. at 665 and *Inman v. Baltimore & Ohio R.R. Co.,* 361 U.S. 138, 140, 80 S.Ct. 242, 243, 4 L.Ed.2d 198 (1959)).

Whether a particular danger was foreseeable, however, is a fact issue and, " '[a]s with all factual issues under the FELA, the right of the jury to pass on this issue must be liberally construed.' " *Syverson,* 19 F.3d at 826 (*quoting Gallose,* 878 F.2d at 85). In *Burns v. Penn Central Co.,* 519 F.2d 512 (2d Cir.1975), the Second Circuit Court of Appeals held that whether a railroad could reasonably foresee that an employee standing in the open door of a train approaching the station would be shot by a gunman from a nearby bridge was a question for the jury. The *Burns* court stated that "foreseeability of harm is no less a matter generally left to the jury's broad [discretion] than any other part of the requisite proof to

recover under the FELA." *Id.*, 519 F.2d at 514 (*citing Gallick, supra* ).

 Moreover, "although the criminal nature of the act causing injury may well bear on the jury's assessment of the defendant's ability to foresee that injury of this type might result from acts or omissions, a jury is not constrained to find that harm caused by a third party's unlawful conduct was not foreseeable." *Id.* As the United States Supreme Court held in *Lillie v. Thompson*, 332 U.S. 459, 68 S.Ct. 140, 92 L.Ed. 73 (1947), "[t]hat the foreseeable danger was from intentional or criminal misconduct is irrelevant; [the railroad] nonetheless had a duty to make reasonable provision against it. Breach of that duty would be negligence, and we cannot say as a matter of law that [the employee's] injury did not result at least in part from such negligence."[5] *Id.*, 332 U.S. at 462, 68 S.Ct. at 142 (footnote omitted). *See Harrison v. Missouri Pac. R. R.*, 372 U.S. 248, 249, 83 S.Ct. 690–91, 9 L.Ed.2d 711 (1963); *Mullahon v. Union Pacific R.R.*, 64 F.3d 1358, 1363 (9th Cir.1995). We hold that under the Federal Employers' Liability Act, 45 U.S.C. § 51 (1939), even though the foreseeable danger to an employee is from intentional or criminal misconduct, an employer nevertheless has a duty to make reasonable provision against it. Breach of that duty would be negligence and whether the employee's injury was the result, in whole or in part, from such negligence, is a question of fact for the jury. *See also Syverson, supra.*[6]

 Furthermore, courts have long heeded the United States Supreme Court's decision of *Rogers v. Missouri Pacific Railroad Co.*, 352 U.S. 500, 506–07, 77 S.Ct. 443, 448–49, 1 L.Ed.2d 493 (1957), in which the Court established the following test for a jury case:

> Under [the FELA] the test of a jury case is simply *whether the proofs justify with reason the conclusion that employer negligence played any part, even the slightest, in producing the injury or death for which damages are sought.* It does not matter that, from the evidence, the jury may also with reason, on grounds of probability, attribute the result to other causes, including the employee's contributory negligence. Judicial appraisal of the proofs to determine whether a jury question is presented is narrowly limited to the single inquiry

**5.** In *Lillie, supra,* a railroad employee sustained injuries when she was assaulted by a non-railroad employee. The twenty-two year old female employee worked the graveyard shift, alone, and in a building situated in an isolated area of the railroad yard. *Id.*, 332 U.S. at 460, 68 S.Ct. at 141. The railroad had reason to know that the yards were frequented by dangerous characters. *Id.* However, the railroad failed to light the building and its surroundings and failed to guard or patrol it in any way. *Id.*, 332 U.S. at 461, 68 S.Ct. at 141. The plaintiff, a telegraph operator whose job required her to open the door to the windowless building to deliver and receive messages from workers, was beaten by a stranger when she answered a knock at the door. *Id.* Though the lower court in *Lillie* determined that there could be "no causal connection between the injury and the [railroad's] failure to light or guard the premises," and further "that the law does not permit recovery 'for the intentional or criminal acts' of either a fellow-employee or an outsider[,]" the United States Supreme Court disagreed. *Id.* (footnote omitted). In holding that the railroad had a duty to make reasonable provision against intentional or criminal misconduct, the Court concluded that plaintiff's allegations, if supported by the evidence, warranted submission to the jury, reasoning that the railroad knew "of conditions which created a likelihood that a young woman performing the duties required of [plaintiff] would suffer just such an injury as was in fact inflicted upon her." *Id.*, 332 U.S. at 461–62, 68 S.Ct. at 142.

**6.** In *Syverson, supra,* a railroad dispatcher was attacked by an unknown assailant as he sat in his parked car in the railroad yard to complete some paperwork. *Id.*, 19 F.3d at 825. The railroad yard was located in an area known as the "weeds," which was frequented by vagrants, alcoholics, drug addicts and other suspicious persons. Railroad police testified that the "weed" people slept, sat, drank, panhandled and otherwise breached the peace in the railroad yard, conditions which raised obvious safety concerns. *Id.*, 19 F.3d at 827. Railroad police further testified that the railroad had been "unresponsive" to requests for more staffing to police the yard. *Id.* Finally, evidence was presented regarding past criminal activity at the yard, including theft, vandalism and breaking into box cars, as well as an assault on a railroad employee ten months earlier. *Id.* The *Syverson* court reversed the summary judgment ruling in favor of the railroad, concluding that, although the evidence described above was "thin," "it is enough under FELA to raise a jury question as to whether the railroad exercised reasonable care, given what was reasonably foreseeable, to furnish [the injured employee] with a safe workplace." *Id.*

*whether, with reason, the conclusion may be drawn that negligence of the employer played any part at all in the injury or death.*

(footnotes omitted and emphasis added). *See* 45 U.S.C. § 51 (1939) ("[e]very common carrier by railroad ... shall be liable ... for ... injury or death resulting *in whole or in part* from the negligence of ... such carrier[.]" *Id.,* in part (emphasis added)). *See Gardner,* at 498, 498 S.E.2d at 482; syl. pts. 1, 2 and 3, *Crookham, supra; O'Connell v. National R.R. Passenger Corp.,* 922 F.2d 1039, 1042 (2d Cir.1991); *McGinn,* 102 F.3d at 300. As this Court held in syllabus point 6 of *Gardner, supra,* "[t]o prevail on a claim under the Federal Employers' Liability Act, 45 U.S.C. § 51 (1939), a plaintiff employee must establish that the defendant employer acted negligently and that such negligence contributed proximately, in whole or in part, to plaintiff's injury." *See also Syverson,* 19 F.3d at 826; *Burns,* 519 F.2d at 514.

## C.

■ Appellant recounts several incidents which occurred prior to the incident at issue in which Ferrell became angry and, according to appellant, violent, when the railroad blocked the Duty Branch Road crossing and, thus, the access road to his home. It is these incidents, appellant contends, which demonstrate that the railroad, in the exercise of due care, could have reasonably foreseen as creating a potential for harm. *See McGinn,* 102 F.3d at 300; *Peyton,* 962 F.2d at 833.

Approximately one year before the incident involving appellant, Ferrell was involved in a physical altercation with Roy Hilton, a cab driver employed by Williams Transport, a taxi service apparently engaged in transporting appellee's railroad crews to and from their places of duty. In the course of dropping off and picking up a railroad crew, Hilton parked the van he was driving at the Duty Branch Road crossing, blocking the access road leading to Ferrell's home. According to Hilton, Ferrell drove up behind him and began blowing his horn. Ferrell then exited his truck, approached Hilton's van and asked him why he was blocking the crossing. Though Hilton apologized to Ferrell, Hilton testified that Ferrell looked at him

> real hard and grabbed the door and slammed it up against my boot. Then he said, started taking his watch off, and he said I am going to go back to my truck and get my gun and I am going to put a stop to this.... [H]e had his truck right up against my van. He acted like a wild man [.]

In the meantime, two railroad employees were waiting in the van and a third employee, conductor David Dale Morgan, was loading his gear into the back of the van when he heard this "pretty harsh argument between the taxi driver and Mr. Ferrell[.]" Morgan testified that he immediately turned and hollered at Ferrell, saying,

> 'Clarence we can't have that.' [Ferrell] immediately disengaged the thing and started laughing, and ... he had the cab blocked in. I told him, 'You're going to have to move your truck,' and he was just as gentle and docile when I engaged with him, because I had prior knowledge of him and had worked the job at different times and knew the man.

Neither Hilton nor Morgan reported this incident to the railroad. Morgan testified that he did not report the incident because he believed

> it wasn't aimed at any railroad people; it was strictly aimed at the taxi. [Ferrell] was mad because the taxi driver had a public road crossing blocked with his cab.... [T]here was none of our people like at any threat because he was not mad at anybody in the taxi except the driver. That's who he was after, was the driver.

In a second incident, which occurred approximately one to two months before the incident now at issue, appellee's railroad cars had blocked the crossing one afternoon as Ferrell waited for his granddaughter to arrive on the school bus. Ferrell testified that it was raining heavily that day and that, although the school bus ordinarily dropped off the school children on the opposite side of the tracks, Ferrell feared that, on account of the heavy rain, the children would try to crawl under the railroad cars in order to get across the tracks. Ferrell indicated that he

asked a railroad employee, whom he presumed to be the conductor, whether the railroad cars would be moved before the school bus arrived. Ferrell testified that the employee did not respond and, that although he was frustrated, he was not "angry" during this incident.

In another incident, which occurred several months before the incident at issue, Roger Armstrong, appellee's trainmaster, testified that Ferrell telephoned him one Sunday night to complain that railroad cars were running idle on the tracks in front of his home. According to Armstrong, Ferrell did not threaten him but was "a little hostile" and "said that he hadn't been able to sleep and he would like something to be done about that." When Armstrong arrived at the tracks, the fuel cutoffs on the locomotives had been pulled and the locomotives were no longer running. Though Armstrong and Ferrell stared at one another, they did not then speak. It was Armstrong's belief that Ferrell pulled the fuel cutoffs.

Armstrong also testified that he had

notified the local crews that normally go up there that we needed to cut—the way that operation has to be worked, we needed to make a cut on the cars to be set in and cut behind [the Duty Branch Road] crossing. *I also told them after this any time locomotives were left in that area, we would move them back to the east in the area of the tipple to keep them away from the houses and from Mr. Ferrell's and any other houses in there.*

(emphasis added).

Armstrong further testified that he routinely informed local crews to " '[b]e careful up there, we want to cut behind to let the people know,' and our people would—we'd probably talked about the situation and they knew that—*the regular people that reported here knew that we needed to prevent a situation.*" (emphasis added)

Armstrong testified that he did not recall speaking to appellant's crew before it went to the Duty Branch Road crossing on the date of the incident involving appellant and Ferrell. Indeed, appellant testified that he was not aware of Ferrell's previous complaints or altercation concerning the crossing.[7]

#### D.

As the facts in this case reveal, railroad conductor Morgan was present when Ferrell slammed the door of the van on the foot of taxi driver Roy Hilton when Hilton parked his van at the Duty Branch Road crossing, blocking Ferrell's access to his home. Appellant alleges that it was negligent for Morgan to fail to report this physical altercation to the railroad and that, under FELA, such negligence is attributable to the railroad. Furthermore, railroad trainmaster Armstrong testified that although he routinely advised railroad crews not to block the Duty Branch Road crossing, he did not recall so advising appellant's crew on the day of the incident at issue. Appellant alleges that Armstrong, who previously had his own experience with Ferrell when Ferrell pulled the fuel cutoffs on locomotives left idling on the tracks, was negligent in failing to advise appellant's crew not to block the crossing that day and that, under FELA, such negligence is attributable to the railroad.

Though the circuit court found there could be no foreseeability on the part of the railroad, in part because no railroad *official* or *supervisor* knew of Ferrell's violent propensities, the language of FELA, 45 U.S.C. § 51 (1939), *inter alia,* imposes liability upon a railroad for an employee's injury where such injury results "in whole or in part from the negligence of *any* of the officers, agents, or *employees* of such" railroad. *Id.,* in relevant part. (emphasis added). *See Mullahon,* 64 F.3d at 1362. In enacting FELA, Congress abolished the fellow-servant rule,[8] placing

---

**7.** Depositions of several other Duty Branch Road residents revealed that they continually complained to the railroad for blocking the crossing. According to residents Peggy Griffey and Melinda Curry, they had separately made some fifty telephone calls to the railroad to complain about the blocked crossing. On more than one occa-

sion, Griffey and Curry contacted the state police when the railroad failed to unblock the crossing.

**8.** "Under the fellow servant rule, 'an employer is not liable for injuries to an employee incurred solely as a result of the negligence of a fellow employee while engaged in the common employment.'" *Mullahon,* 64 F.3d at 1362 n. 3 *(quot-*

" 'the negligence of a co-employee upon the same basis as the negligence of the employer.' " *Id.* (*quoting Chesapeake & Ohio Ry. v. DeAtley,* 241 U.S. 310, 313, 36 S.Ct. 564, 565, 60 L.Ed. 1016 (1916)). Under FELA, a railroad may be liable for the negligence of *any* of its employees. *See Smith v. National R.R. Passenger Corp.,* 856 F.2d 467, 469–70 (2d Cir.1988) (unspecified employees' negligence in failing to report assailant-employee's previous misconduct to supervisor raised jury question as to employer's liability for assault on another employee).

The United States Supreme Court explained Congress' purpose in treating the negligence of an employee as the negligence of the employer in *Sinkler v. Missouri Pacific R. Co.,* 356 U.S. 326, 330, 78 S.Ct. 758, 762, 2 L.Ed.2d 799 (1958):

> Thus while the common law had generally regarded the torts of fellow servants as separate and distinct from the torts of the employer, holding the latter responsible only for his own torts, it was the conception of this legislation that the railroad was a unitary enterprise, its economic resources obligated to bear the burden of all injuries befalling those engaged in the enterprise arising out of the fault of any other member engaged in the common endeavor. *Hence a railroad worker may recover from his employer for an injury caused in whole or in part by a fellow worker, not because the employer is himself to blame, but because justice demands that one who gives his labor to the furtherance of the enterprise should be assured that all combining their exertions with*

> *him in the common pursuit will conduct themselves in all respects with sufficient care that his safety while doing his part will not be endangered.* If this standard is not met and injury results, the worker is compensated in damages.

(emphasis added). *See Baker v. Baltimore & Ohio Railroad Co.,* 502 F.2d 638, 641 (6th Cir.1974); *Mullahon,* 64 F.3d at 1363.

█ We hold that because the Federal Employers' Liability Act, 45 U.S.C. § 51 (1939), *inter alia,* imposes liability upon an employer for "the negligence of any of the officers, agents, or employees" of such employer, under the act, a railroad may be liable for the negligence of any railroad employee.[9]

We cannot conclude, as a matter of law, that under FELA, it was not negligent for railroad conductor Morgan not to report Ferrell's prior physical attack to railroad officials. Although Morgan testified that he did not report the attack because he believed the matter was strictly between Ferrell and the driver, a non-railroad employee, we note that Morgan further testified that the reason Ferrell attacked the driver was because Ferrell "was mad because the driver *had a public road crossing blocked with his cab* [.]" (emphasis added). In that it is alleged that the *railroad* consistently blocked the Duty Branch Road crossing as well, prompting numerous angry complaints from residents, including Ferrell, appellant has raised a genuine issue of material fact as to whether

*ing* 53 Am.Jur.2d, *Master and Servant* § 275 (1970)).

9. Appellant also argues that the taxi driver, Roy Hilton, was negligent in failing to report his altercation with Ferrell to the railroad. Appellant contends that although Hilton was an employee of Williams Transport and not of the railroad, he was nevertheless an "agent" of the railroad under FELA and, as such, his negligence is attributable to the railroad. *See* 45 U.S.C. § 51 (1939) ("[e]very common carrier by railroad ... shall be liable in damages ... for ... injury ... resulting in whole or in part from the negligence of any of the ... agents ... of such carrier[.]" *Id.,* in relevant part. (emphasis added)).

In *Sinkler, supra,* the United States Supreme Court held that "when a railroad employee's injury is caused in whole or in part by the fault of others performing, under contract, operational activities of his employer, such others are 'agents' of the employer within the meaning of" FELA. *Id.,* 356 U.S. at 331–32, 78 S.Ct. at 763. We note that appellant contends that Hilton, in transporting railroad crews to and from places of duty, was "performing, under contract, operational activities" of the railroad. *Id.* Appellant's conclusory statements, and the railroad's wholesale refutal thereof notwithstanding, the parties have failed to present any evidence on this factual issue. In that this issue requires further factual development, this Court will not address it in this appeal.

Morgan was negligent in failing to report the attack.

Likewise, we find there to be factual issues raised as to whether trainmaster Armstrong was negligent, on the day of the incident at issue, in failing to advise appellant's crew not to block the Duty Branch Road crossing. Appellant had previously gone to the tracks by Ferrell's home after Ferrell called to complain about locomotives left idling on the tracks only to discover that Ferrell had trespassed upon railroad property to pull the fuel cutoffs. These incidents, viewed in light of and in addition to Ferrell's other complaints and the numerous complaints of other Duty Branch Road residents, lead us to conclude that, under FELA, appellant has raised a jury question as to whether the railroad was negligent in blocking the Duty Branch Road crossing and whether such negligence, in whole or in part, caused appellant's injuries. *See* syl. pt. 6, *Gardner, supra.* Appellant has further shown circumstances which raise factual issues as to whether, in the exercise of due care, the railroad could have reasonably foreseen as creating a potential for harm. *See McGinn,* 102 F.3d at 300; *Peyton,* 962 F.2d at 833. It was therefore error for the circuit court to enter summary judgment in favor of the railroad.

### IV.

For the reasons discussed herein, the May 2, 1996 order of the circuit court, granting the railroad's motion for summary judgment is hereby reversed and this case is remanded.

Reversed and remanded.

MAYNARD, J., deeming himself disqualified, did not participate in the decision of this case.