Emmel **TOLSTON**, Plaintiff–Appellant,

v.

**NATIONAL RAILROAD PASSENGER CORPORATION, Defendant– Appellee.**

No. 96–1627.

United States Court of Appeals, Seventh Circuit.

Argued Aug. 6, 1996.

Decided Aug. 14, 1996 *.

---

* This opinion was originally issued as an unpublished order, and is now being published pursuant to Circuit Rule 53(d)(3).

Christopher Mullen, Mullen & Minella, Chicago, IL, Terry N. Brown (argued), Brown & Gavin, Belleville, IL, for Plaintiff-Appellant.

Hugh c. Griffin, David R. Schmidt (argued), Leslie J. Rosen, Susan K. Laing, Stephanie A. Burris, Lord, Bissell & Brook, Chicago, IL, for Defendant-Appellee.

Before BAUER, MANION, and DIANE P. WOOD, Circuit Judges.

DIANE P. WOOD, Circuit Judge.

Emmel Tolston brought this action against her former employer, the National Railroad Passenger Corporation, known more familiarly as Amtrak, under the Federal Employers' Liability Act, 45 U.S.C. §§ 51–60, alleging severe and permanent injuries to her knees as a result of Amtrak's negligence. The district court granted Amtrak's motion for summary judgment on the ground that Tolston's action was barred by the FELA three-year statute of limitations. We affirm.

Tolston began working as a coach cleaner for Amtrak in September 1978. Her job involved walking over uneven ground, climbing on and off railroad cars, bending, stooping, and a certain amount of work on her knees. In the late 1970s and early 1980s, she fell several times and injured her knees slightly. On these occasions, she visited the company doctor, and after the third fall (when she also injured her back), she took 28 days off work. She also began to see the company nurse regularly to obtain pain pills, and she began experiencing difficulty climbing and carrying heavy things.

In 1984 or 1985, experiencing increasing pain in her right knee, Tolston visited Cook County Hospital for help. The staff there advised her that the cartilage in the knees was damaged and would require surgery for repair. Three or four years later, Cook County doctors told Tolston that she was suffering from degenerative joint disease, and by 1989, she was going to Cook County Hospital for more regular treatment and

medication for pain in the right knee. She reinjured the knee in late 1990 or early 1991 when she tripped over some carpeting at the train yard. Finally, in January 1992, she decided to have the surgery that her doctors had recommended. By this time, she was experiencing substantial difficulty walking— to the point that she was in so much pain she had to fly home from Mardi Gras instead of returning on the bus, as she had planned.

On May 1, 1992, Dr. Aaron Rosenberg performed the surgery, which involved a total right knee replacement, at Rush–Presbyterian–St. Luke's Hospital. Tests that Dr. Rosenberg ordered beforehand showed that she had some arthritis in her right knee, along with missing cartilage and a degenerated knee cap. After the surgery, apparently in the context of a conversation about her ability to return to work, Dr. Rosenberg learned about her job at Amtrak and offered the opinion that her knee problems might have been caused by her job responsibilities. (The record does not indicate whether or not she returned to work at Amtrak, either in her former job or in a new one.)

■ Tolston filed this action on April 27, 1995, under § 51 of the FELA, alleging negligence on the part of the railroad. Amtrak moved for summary judgment, asserting that Tolston's action was barred by the FELA's three-year statute of limitations. 45 U.S.C. § 56. The district court agreed with Amtrak and granted summary judgment for it on February 12, 1996. This appeal followed.

We agree with the district court that this case is controlled by *Fries v. Chicago & Northwestern Transp. Co.,* 909 F.2d 1092 (7th Cir.1990). Like this case, Fries was an action to recover for injuries suffered by a railroad worker, brought under FELA § 51. Fries, the plaintiff, had begun to notice a decline in his hearing and tinnitus around 1981 or 1982. Although his hearing problems bothered him significantly, he did not seek medical treatment until May 1985. Only then did he learn how serious the impairment was. He sued under the FELA in November 1987, claiming that the railroad had acted negligently in requiring him to work near loud industrial noise and in failing to give him the proper protective gear.

This court found that Fries' action was time-barred. Section 56 of the FELA provides that no claim may be brought "unless commenced within three years from the day the cause of action accrued." Accrual, the court explained, is defined in terms of two components: the injury and its cause. The date of the injury is often easy to identify, but in cases involving progressive conditions it may be more difficult to pinpoint a time. Thus, relying on *Urie v. Thompson,* 337 U.S. 163, 69 S.Ct. 1018, 93 L.Ed. 1282 (1949), the *Fries* court noted that when the specific date of the injury cannot be determined because it resulted from continuous exposure to a harmful condition over a period of time, a plaintiff's cause of action accrues when the injury manifests itself. 909 F.2d at 1094. The key is knowledge of the injury and, by extension, knowledge of the cause of that injury; it does not matter whether the plaintiff realizes that a *legal* wrong has occurred. See *United States v. Kubrick,* 444 U.S. 111, 122–23, 100 S.Ct. 352, 359–60, 62 L.Ed.2d 259 (1979); *Goodhand v. United States,* 40 F.3d 209, 212 (7th Cir.1994).

Following *Urie* and *Kubrick,* the *Fries* court summarized the rule for FELA cases as follows: "a cause of action accrues for statute of limitations purposes when a reasonable person knows or in the exercise of reasonable diligence should have known of both the injury and its governing cause." 909 F.2d at 1095. Both components, the court emphasized, require "an objective inquiry into when the plaintiff knew or should have known, in the exercise of reasonable diligence, the essential facts of injury and cause." *Id.* A plaintiff need not be sure which cause is predominant, as long as she knows or has reason to know of a potential cause. Just to be clear, the court added that this rule imposes on plaintiffs the affirmative duty to investigate the cause of a known injury. Applying that rule, the *Fries* court found that the statute of limitations ran in 1984, three years after Fries knew or should have known of both his injury and its cause.

■■ Realizing her uphill battle, Tolston tries to distinguish *Fries* on the ground that her knee injury was much more difficult to

diagnose as work-related than *Fries'* hearing loss. She believed that her knee pains were due to ordinary wear and tear, especially because she had a weight problem that became more pronounced as time went by. *Fries*, in contrast, knew that there was no other explanation for his hearing loss except his workplace exposure to sound. We find this distinction unpersuasive. It comes close to suggesting that only actual knowledge of cause is enough to make the claim "accrue"— a proposition we squarely rejected in *Fries, Nemmers v. United States*, 795 F.2d 628, 631–32 (7th Cir.1986), and *Drazan v. United States*, 762 F.2d 56, 59 (7th Cir.1985). At some point, persons with degenerative conditions have a duty to investigate cause. See, *e.g., Aparicio v. Norfolk & Western Ry. Co.*, 84 F.3d 803, 814–15 (6th Cir.1996) (applying *Fries* to FELA claim based upon carpal tunnel syndrome). The only question is therefore whether the record here was sufficiently clear to justify summary judgment on when Tolston, in the exercise of reasonable diligence, should have known the cause of her injury.

The district court found that Tolston had suffered from extreme pain, by her own admission, since at least 1989, by which time she was going to Cook County Hospital for regular treatment and medication for pain in the right knee. She had sought medical treatment for the knee on numerous occasions by that time, both with company medical personnel and at Cook County Hospital. We agree with the district court that, from an objective standpoint, these admitted facts were enough to require some investigation into the potential causes of her condition. Like *Fries*, she knew she had a problem by 1989, and, going beyond what *Fries* did, she was actively seeking medical treatment for it. We accept her representation that she never asked anyone about the source of her pain, up to and including the moment when Dr. Rosenberg volunteered that it might be work-related. Under *Fries*, this does not change matters for her.

Because the undisputed facts show that Tolston knew about her medical condition before April 1992, and with the exercise of reasonable diligence should have known about its cause by that time, we conclude that her May 1995 FELA action is time-barred. We therefore AFFIRM the judgment of the district court.