Henry HITCHCOCK, Plaintiff,

v.

NATIONAL RAILROAD PASSENGER CORP., Defendant.

No. 96–CV–1543 (DRH).

United States District Court,
N.D. New York.

Sept. 28, 1998.

Roemer Wallens & Mineaux, LLP, Albany, NY (Matthew J. Kelly, of counsel), for Plaintiff.

Landman, Corsi, Ballaine & Ford, Newark, NJ (John A. Bonventre, Christopher S. Kozak, of counsel), for Defendant.

## MEMORANDUM–DECISION AND ORDER

HOMER, United States Magistrate Judge.

Plaintiff, Henry Hitchcock ("Hitchcock") brings this action against his former employer, National Railroad Passenger Corporation ("Amtrak"), pursuant to the Federal Employers' Liability Act ("FELA"), 45 U.S.C. § 51 *et seq.* The complaint alleges that Amtrak negligently failed to provide Hitchcock with a safe work environment and appropriate work tools and that as a result, Hitchcock now suffers from carpal tunnel syndrome ("CTS").[1] Compl., ¶ 3. Presently pending is Amtrak's motion for summary judgment. Docket No. 18. For the reasons which follow, the motion is granted.

### I. Background

Hitchcock began his employment with Amtrak on January 4, 1979 as a machinist. Pl.'s Resp. to Interrogs. (Bonventre Decl. (Docket No. 20), Ex. E), ¶ 2. He continued in

---

1. Carpal tunnel syndrome is "a complex of symptoms resulting from compression of the median nerve in the carpal tunnel, with pain and burning or tingling paresthesias in the fingers and hand, sometimes extending to the elbow." *Dorland's Illustrated Medical Dictionary*, p. 1626 (28th ed.1994).

Amtrak's employ until his resignation in February 1992. *Id.* As a machinist, Hitchcock performed several different types of work, all of which required extensive work with his hands. Compl., ¶ 3.

This action was originally commenced in a Pennsylvania state court on March 1, 1995. Bonventre Decl., Ex. A. Pursuant to a stipulation of the parties, that action was discontinued and the parties agreed that if the action was refiled within six months in another jurisdiction, the refiled action would be deemed filed as of March 1, 1995. Bonventre Decl., Ex. A. Hitchcock then filed this action within that six month window and this action is thus deemed commenced as of March 1, 1995.

## II. Summary Judgment Standard

Under Fed.R.Civ.P. 56(c), if there is "no genuine issue as to any material fact ... the moving party is entitled to judgment as a matter of law, ... where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 585–86, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The moving party bears the burden of demonstrating that no genuine issue of material fact exists. *FDIC v. Giammettei,* 34 F.3d 51, 54 (2d Cir.1994); *see also Heyman v. Commerce & Indus. Ins. Co.,* 524 F.2d 1317, 1320 (2d Cir.1975). Once the movant has come forward with sufficient evidence in support of the motion for summary judgment, the opposing party must "set forth specific facts showing that there is a genuine issue for trial" and cannot rest on "mere allegations or denials" of the facts asserted by the movant. Fed.R.Civ.P. 56(e); *Rexnord Holdings, Inc. v. Bidermann,* 21 F.3d 522, 525–26 (2d Cir.1994).

The trial court must resolve all ambiguities and draw all reasonable inferences in favor of the non-movant. *American Cas. Co. of Reading, Pa. v. Nordic Leasing, Inc.,* 42 F.3d 725, 728 (2d Cir.1994); *see also Eastway Constr. Corp. v. City of New York,* 762 F.2d 243, 249 (2d Cir.1985). "Furthermore, the non-movant 'will have his allegations taken as true, and will receive the benefit of the doubt when his assertions conflict with those

of the movant.' " *Samuels v. Mockry,* 77 F.3d 34, 36 (2d Cir.1996) (citations omitted).

## III. Discussion

Amtrak's motion raises two grounds on which it contends summary judgment should be granted. First, it contends that Hitchcock's claim is barred by a release given to Amtrak in consideration for settlement of earlier litigation. Second, Amtrak asserts that Hitchcock's instant claim is barred by the applicable statute of limitations. Because this action is barred by the FELA limitation period, Amtrak's argument concerning the release need not be considered.

### A. FELA Statute of Limitations

 FELA claims are governed by a three year statute of limitations. 45 U.S.C. § 56. As with any limitation period, this period begins to run at the time the cause of action accrues. Under the FELA, accrual has two components—injury and causation. *Tolston v. National R.R. Passenger Corp.,* 102 F.3d 863, 865 (7th Cir.1996). When the injury complained of is clear and occurred on a date certain, the time of accrual is obvious. *See Albert v. Maine Cent. R.R. Co.,* 905 F.2d 541, 543 (1st Cir.1990). However, "when the specific date of *injury* cannot be determined because an injury results from continual exposure to a harmful condition over a period of time a plaintiff's cause of action accrues when the injury manifests itself." *Fries v. Chicago & Northwestern Transp. Co.,* 909 F.2d 1092, 1094 (7th Cir.1990) (citing *Urie v. Thompson,* 337 U.S. 163, 170, 69 S.Ct. 1018, 93 L.Ed. 1282 (1949)).

 Although the Second Circuit has not addressed accrual in these circumstances, the other circuits to have considered the question have unanimously adopted a discovery rule. *See Tolston,* 102 F.3d at 865; *Aparicio v. Norfolk & Western Ry. Co.,* 84 F.3d 803, 814–15 (6th Cir.1996); *Bealer v. Missouri Pac. R.R. Co.,* 951 F.2d 38, 39 (5th Cir.1991); *Albert,* 905 F.2d at 543; *Townley v. Norfolk & Western Ry. Co.,* 887 F.2d 498, 501 (4th Cir.1989). Under this rule, a FELA claim accrues when a reasonable person knew or should have known of both his injury and its possible cause. *Fries,* 909 F.2d at 1095;

*Wilson v. Amtrak*, No. 96–CV–9629, 1998 WL 226192, at *1 (S.D.N.Y. May 4, 1998).

### B. Accrual of Hitchcock's Claim

The first element of the discovery rule is the injury. *Id.* Hitchcock knew that he suffered symptoms of CTS over ten years ago. As early as June 1988, Hitchcock complained to Dr. David Semenoff about "occasional numbness of the entire right hand." Bonventre Decl., Ex. E (June 18, 1988 letter from Dr. Semenoff). Over the course of the next seven years, until he commenced the instant action, Hitchcock complained on numerous occasions of hand and wrist pain identical to that now alleged. *See generally* Bonventre Decl., Ex. E. Most relevant on this point, however, is Hitchcock's own admission in response to interrogatories that CTS was diagnosed in 1989. *Id.*

Hitchcock, then, was aware of the injury for which he now seeks compensation by 1989. That Hitchcock's condition may have worsened over time and become a serious problem only thereafter is not relevant. *See Aparicio*, 84 F.3d at 815 (plaintiff allegedly suffering from CTS is not relieved from obligation to "discover" injury by fact that injury continues to progress and is not yet at its maximum severity).

The next question is whether Hitchcock knew or should have known that the injury was work related. *Fries*, 909 F.2d at 1095; *Wilson*, 1998 WL 226192, at *1. Dr. Semenoff's June 18, 1988 letter indicated that the hand numbness occasionally suffered by Hitchcock was "more related to the type of work he is doing and vigorous activity seems to exacerbate his symptoms much more intensely than more sedentary chores." Bonventre Decl., Ex. E. Hitchcock's own deposition testimony in this action reveals that he understood his hand pain to be related to the nature of his work. *See* Hitchcock Dep. (Bonventre Decl., Ex. I), p. 112 (in 1989 "symptoms are related to how much I use my hands and what I was doing"); *id.* at p. 113 ("if you changed jobs that you did less actual physical work with your hand, then you had less period of the symptoms" [sic] ). Most telling is the following exchange between Amtrak's counsel and Hitchcock:

COUNSEL: Do you remember before your resignation in 1992 what kind of pains you may have experienced, were they different now?

HITCHCOCK: I wasn't working.

COUNSEL: Were they not—were your hands not bothering you as much during that period of time—

HITCHCOCK: It's always been associated with—the use of my hands was always direct association with pain.

COUNSEL: So did you think that the pain was related to work?

HITCHCOCK: I think the pain was related to using my hands, yes.

COUNSEL: But did you think it had anything to do with your work duties?

HITCHCOCK: Well, yes, because I work with my hands.

*Id.* at p. 116.

Under this rule, potential plaintiffs have an affirmative obligation to investigate the cause of a known injury. *Tolston*, 102 F.3d at 865. In addition, a plaintiff may not avoid the running of the limitation period by arguing that he was unsure whether work was the predominant cause of his injury. Once an employee knows or has reason to know that work is a potential cause of his known injury the limitation period begins to run and a plaintiff bears the burden of investigating the cause of his injury. *Id.* at 866 ("At some point, persons with degenerative conditions have a duty to investigate cause"); *Fries*, 909 F.2d at 1095; *see also Albert*, 905 F.2d at 544 (plaintiff need not have "definite knowledge" that injury was work related before statute of limitations begins to run).

Viewing the evidence in the light most favorable to Hitchcock, at the very latest he knew of both his injury and its relationship to his work at the time of his resignation from Amtrak in February 1992. This action, however, was not commenced until March 1995, more than three years after the latest possible accrual of the claim. The action, therefore, is untimely.

Hitchcock makes two arguments in opposition to summary judgment. First, Hitchcock argues that this claim did not ac-

crue until the first diagnosis of CTS in March 1993. This argument is both factually and legally incorrect. As a factual matter, Hitchcock was actually first diagnosed as suffering from CTS in 1989. *See* Pl.'s Resp. to Interrogs. (Bonventre Decl., Ex. E), ¶ 10; Bonventre Decl., Ex. E (May 10, 1989 Medical Report, p. 2).[2] Legally, a medical diagnosis is not a prerequisite to the commencement of the limitation period; thus, the period may, and often does, begin to run before any diagnosis. *Fries*, 909 F.2d at 1095–96; *Townley*, 887 F.2d at 501.

 Second, Hitchcock argues that an offer by Amtrak to delay any lawsuit based on these facts until after Hitchcock underwent surgery to treat his CTS tolled the limitations period. This agreement, however, was never executed by the parties. In essence, plaintiff argues that Amtrak should be estopped from asserting the statute of limitation defense. *See Glus v. Brooklyn Eastern District Terminal,* 359 U.S. 231, 234, 79 S.Ct. 760, 3 L.Ed.2d 770 (1959). Equitable estoppel may act to toll the limitations period in FELA claims. *Clauson v. Smith,* 823 F.2d 660, 661 (1st Cir.1987). A party may be estopped from asserting a timeliness defense if the plaintiff can show that he or she was misled by the defendant into "reasonably and justifiably believing that the statute of limitations would not be used as a defense or would be extended." *Mikinberg v. Baltic S.S. Co.,* 988 F.2d 327, 331 (2d Cir.1993). Amtrak proposed an extension of the three year limitation period. That offer was not accepted, however, and Hitchcock could not "reasonably and justifiably" believe that such an unaccepted offer would nonetheless act to toll the statute.[3]

**2.** Although this medical report makes reference to a relationship between Hitchcock's injuries and a 1987 automobile accident, his own testimony demonstrates that he was suffering hand and finger symptoms while working for Amtrak prior to that accident. Hitchcock Dep. pp. 46–51.

**3.** The record is unclear exactly when the agreement in question was offered. Hitchcock's argument is further weakened, however, if, as it appears from the record, that agreement was offered only after this action was refiled in federal court. *See* Hitchcock Aff. (May 5, 1997 letter

Accordingly, Hitchcock's claim is barred by the three year statute of limitation imposed by the FELA and Amtrak, therefore, defendant is entitled to summary judgment.

### IV. Conclusion

**WHEREFORE,** for the reasons set forth above, it is hereby

**ORDERED** that the defendant's motion for summary judgment is **GRANTED;** and

**IT IS FURTHER ORDERED** that the Clerk of the Court serve a copy of this order, by regular mail, upon all parties to this action.

**IT IS SO ORDERED.**

from Stephen Gell); Def.'s Reply Mem. of Law (Docket No. 24), p. 3 (agreement offered "subsequent[ ]" to September 1996 refiling of action). If true, the filing of the action itself would have ended the running of the statute of limitations and no agreement subsequently offered would in any way affect the limitations question. Any claim that the agreement, even if executed, would have constituted a retroactive extension of a previously expired statute of limitations is completely belied by the proposed agreement. *See* Hitchcock Aff. (Docket No. 26) (copy of proposed agreement attached).