IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

September 2013 Term

**FILED**

**September 27, 2013**

released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

No. 12-0420

GARY L. CAUDILL,
Plaintiff Below, Petitioner

v.

CSX TRANSPORTATION, INC.,
Defendant Below, Respondent

Appeal from the Circuit Court of Mingo County
Honorable Michael Thornsbury, Judge
Civil Action No. 10-C-304

AFFIRMED

Submitted: September 4, 2013
Filed: September 27, 2013

Richard N. Shapiro, Esq.                          J. David Bolen, Esq.
Virginia Beach, Virginia                          Todd R. Meadows, Esq.
Attorney for Petitioner                           Huntington, West Virginia
                                                  Attorneys  for  Respondent

JUSTICE LOUGHRY delivered the Opinion of the Court.

**SYLLABUS BY THE COURT**

1. "'The standard of review applicable to an appeal from a motion to alter or amend a judgment, made pursuant to W.Va. R.Civ.P. 59(e), is the same standard that would apply to the underlying judgment upon which the motion is based and from which the appeal to this Court is filed.' Syl. Pt. 1, *Wickland v. American Travellers Life Ins. Co.*, 204 W.Va. 430, 513 S.E.2d 657 (1998)." Syl. Pt. 1, *Graham v. Beverage*, 211 W.Va. 466, 566 S.E.2d 603 (2002).

2. "A circuit court's entry of summary judgment is reviewed *de novo*." Syl. Pt. 1, *Painter v. Peavy*, 192 W.Va. 189, 451 S.E.2d 755 (1994).

3. "Summary judgment is appropriate where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, such as where the nonmoving party has failed to make a sufficient showing on an essential element of the case that it has the burden to prove." Syl. Pt. 4, *Painter v. Peavy*, 192 W.Va. 189, 451 S.E.2d 755 (1994).

4. "Pursuant to 45 U.S.C. § 56 (1948), federal and state courts have concurrent jurisdiction of claims brought under the Federal Employers' Liability Act, 45 U.S.C. § 51 (1939). Although a state court may use procedural rules applicable to civil actions in the state court unless otherwise directed by the Federal Employers' Liability Act, substantive

i

issues under the Federal Employers' Liability Act are determined by the provisions of the statute and interpretative decisions of the Federal Employers' Liability Act given by the federal courts." Syl. Pt. 4, *McGraw v. Norfolk & Western Ry. Co.*, 201 W.Va. 675, 500 S.E.2d 300 (1997).

5. "The provision of the Federal Employers' Liability Act, as amended, prescribing a period of three years after a cause of action accrues within which to commence an action covered by that statute relates to the right which it creates and the remedy which it provides; and an action based upon or within the scope of the statute, which is not commenced within the three year period of limitation, can not be maintained." Syl. Pt. 3, *Jordan v. Baltimore & O. R. Co.*, 135 W.Va. 183, 62 S.E.2d 806 (1950).

6. The statute of limitations under the Federal Employers' Liability Act, 45 U.S.C. § 56 (2006), requires an objective inquiry as to when a plaintiff knew or should have known, in the exercise of reasonable diligence, the facts of his or her injury and its cause.

LOUGHRY, Justice:

The petitioner, Gary L. Caudill ("Mr. Caudill"), appeals from the circuit court's March 12, 2012, order denying his motion to alter or amend the circuit court's previous order entered February 27, 2012, granting summary judgment in favor of the respondent, CSX Transportation, Inc. ("CSXT"). Mr. Caudill instituted this action under the Federal Employers' Liability Act ("FELA"), 45 U.S.C. § 51 et seq.,[1] alleging that he sustained injuries arising out of his employment with CSXT.[2] The circuit court entered summary judgment in favor of CSXT on the basis that Mr. Caudill's action was untimely filed. In this appeal, Mr. Caudill asserts that the circuit court erred because there are disputed material facts concerning the applicable statute of limitations and whether he knew or should have known of his injury and its cause more than three years prior to filing his complaint.

---

[1]"Pursuant to 45 U.S.C. § 56 (1948), federal and state courts have concurrent jurisdiction of claims brought under the Federal Employers' Liability Act, 45 U.S.C. § 51 (1939)." Syl. Pt. 4, in part, *McGraw v. Norfolk & Western Ry. Co.*, 201 W.Va. 675, 500 S.E.2d 300 (1997).

[2]In *McGraw*, we also explained the purpose of FELA actions:

Under the Federal Employers' Liability Act, 45 U.S.C. § 51 (1939), *inter alia*, "[e]very common carrier by railroad while engaging in commerce . . . shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce, or, in case of the death of such employee, to his or her personal representative . . . for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier [.]"

*Id.* at Syl. Pt. 3.

1

Upon our consideration of the record in this matter, the briefs and arguments of the parties, the applicable legal authority, and for the reasons discussed below, we affirm the orders of the circuit court.

## I. Facts and Procedural History

Mr. Caudill was employed by CSXT from 1977 until 2008. During this period, Mr. Caudill's job as a conductor required him to ride for several hours at a time in either the caboose or the locomotive of trains. Mr. Caudill maintains that he sustained injuries to his back due to unsupportive seats on the cabooses and locomotives. When asked to explain what he meant by "not supportive," Mr. Caudill testified during his deposition, as follows:

> Q. If you were to tell me, you know, this one problem with these seats was the thing that bothered you the most, what would that be?
> A. You didn't have anything here to support you.
>
> Q. And you're talking about the back then?
> A. The back and the bottom.
>
> Q. Okay.
> A. Because between the excess lateral movement, the locomotive gave, then the suspension-wise such as shocks and so on and so forth, you had nothing to take the impact when you hit a low spot or the pan-out or circumstances, it would only end up right in your back.
>
> Q. Did the seats have armrests on them or no?
> A. No, sir.
>
> • • • •
> Q. Was there any vibration? Could you feel vibration?

2

A. Yes, sir.

Q. Okay. What did it feel like? Tell me what it felt like.
A. It was up and down, continuously up and down motion.

Q. Like were moving up and down, the seat moving up and down?
A. Uh-huh.

Q. Is that "yes"?
A. Yes.

Q. Okay.
A. Yes, the motion up and down, at the same time you went from side to side[,] as well[] as up and down[,] you went side to side continuously.

Mr. Caudill testified that he complained several times over the years to railroad officers and trainmasters about the seats, including that they "were uncomfortable to ride in and they weren't supportive to your back[,]" and that he made similar complaints to his union officers and at union safety meetings.

During the same time Mr. Caudill was complaining about the seats on the locomotives, he had recurrent back pain, which he described as "on and off for a long time." Mr. Caudill's medical records, as well as the deposition testimony of Dr. John Darnell, his family physician, reflect that he saw Dr. Darnell in 1985 for "low back pain[,]" which he reported had been ongoing for approximately one year. The appendix record also contains

3

the records of chiropractors[3] showing that Mr. Caudill received treatment for back pain between 2001 and 2007.[4] A chiropractic record dated September 25, 2001, demonstrates that Mr. Caudill reported that he had been experiencing low back pain for some time; that it was painful for him to sit, walk, and bend; and that his work involved sitting and standing. Mr. Caudill also testified that his back "went out" while he was at work approximately eight years earlier and that he was taken to a hospital for treatment.[5]

In November 2005, Mr. Caudill saw Dr. Darnell for several complaints, including hip and back pain. A medical record dated November 11, 2005, reflects that Mr. Caudill complained to Dr. Darnell of, among other things, pain in the "S1 area," and that Dr. Darnell ordered an x-ray of Mr. Caudill's hip and back at that time. In the radiological report

---

[3]Although Mr. Caudill claims that it is significant that he did not check a box on the chiropractic forms to indicate that his back pain was work-related, a close review of these forms shows that patients are asked whether their condition is due to an "accident" and, if so, whether the accident was "auto," "work," "home," or "other." Mr. Caudill does not attribute his condition to an "accident," therefore, there was no basis for him to check any of the boxes in this portion of the form. We do not see any other area on these forms where "work" is a box that can be checked by the patient as a reason for his/her "condition."

[4]Although Mr. Caudill testified during his deposition that he first saw Dr. Johnson, a chiropractor, in 2007, the appendix record reflects that he saw Dr. Johnson for back pain in 2001.

[5]Mr. Caudill was deposed in 2011, thus, eight years earlier would mean that this hospital visit occurred in 2003. We also note that Dr. Darnell testified that his medical records showed that Mr. Caudill suffered "acute back pain" while at work in 1993, and was taken to the emergency room by paramedics. Accordingly, it appears that Mr. Caudill may have been taken from work to a hospital due to back pain on two separate occasions.

of this x-ray dated November 11, 2005, it states that Mr. Caudill had "grade-1 anterolisthesis of L5 on S1 secondary to L5 bilateral spondylolysis. Marked degenerative changes at this level identified." Mr. Caudill saw Dr. Darnell two more times in November and the medical record for one of those visits shows a notation that "pain better [with] Aleve per pt re back." Notwithstanding these post-x-ray visits, Mr. Caudill contends that he never asked Dr. Darnell about the results of his x-ray, nor did he further investigate the cause of his back pain. Even though Mr. Caudill had complained numerous times to his superiors at work and to his union officers regarding the unsupportive seats on the locomotives, and even though he was only thirty-five years old when he first reported his back pain to Dr. Darnell in 1985, he testified that he attributed the pain to "getting older" and "part of life."[6]

Mr. Caudill alleges that he last worked for CSXT on June 29, 2008, by which time his back pain had become debilitating. Around this same time, Dr. Darnell ordered an MRI of Mr. Caudill's lumbar spine. The June 26, 2008, radiological report of this MRI showed, in part, "chronic bilateral L5 spondylolysis with grade 1 anterolisthesis at L5-S1," which was the same radiological impression from the x-ray taken in 2005. Dr. Darnell referred Mr. Caudill to Dr. Phillip Tibbs, a neurosurgeon, who reviewed Mr. Caudill's MRI

_____

[6]When Mr. Caudill first reported back pain to Dr. Darnell in 1985, he had worked for CSXT for approximately eight years.

5

and diagnosed him with spondylolisthesis.[7] Dr. Tibbs performed surgery on Mr. Caudill after which he opined that Mr. Caudill's condition was disabling and medically disqualified him from his work as a conductor for CSXT.

During Dr. Tibbs's deposition, he explained that spondylolisthesis is a medical term that means "slippage of the vertebrae."[8] He further testified that Mr. Caudill's symptoms "had been going on for at least five or seven years[;]" that his back problems dated back to 1985; and that his back pain would occasionally be so bad that he could not get out of bed or he would have to go to the hospital.[9] Dr. Tibbs was asked to look at photographs

---

[7]The circuit court found in its summary judgment order that Mr. Caudill filed this FELA action based on a condition diagnosed in his June 2008 MRI, and that this was the same condition diagnosed in his November 2005 lumbar x-ray. Although Mr. Caudill argues this finding was in error because spondylolisthesis is not the same thing as spondylolysis, we conclude that the circuit court was correct in its finding since both the 2005 x-ray and the 2008 MRI showed anterolisthesis. *See Davenport v. State, ex rel., Wyoming Workers' Safety*, 268 P.3d 1038, 1041 n.1 (2012) (neurosurgeon explains that "anterolisthesis and spondylolisthesis are synonymous."); *Brannon v. Astrue,* No. 11–CV–169–PJC, 2012 WL 3779630, at *5 n.8 (N.D.Okla. Aug. 31, 2012) ("Anterolisthesis is another term for spondylolisthesis, which is the forward displacement of one vertebra over another. *Dorland's Illustrated Medical Dictionary* 1684 (29th ed.2000)."); *Barnes v. Shinseki*, No. 10-1945, 2011 WL 5289724, at *3 n.3 (Table) (Vet.App. Nov. 4,2011) ("Anterolisthesis is also called spondylolisthesis, which is 'forward displacement of one vertebra over another . . . .' DORLAND'S at 98, 1754."); *Price v. Astrue*, No. 4:07-CV-213-A, 2008 WL 1971385, at *3 n.6 (N.D.Tex. Apr. 29, 2008) ("Anterolisthesis is another term for spondylolisthesis, which refers to the forward displacement of one vertebra over another.").

[8]This is also consistent with the fact that anterolisthesis and spondylolisthesis are synonymous. *See supra* n. 7.

[9]Dr. Tibbs also discussed Mr. Caudill's "pars defect," a pre-existing condition likely
(continued...)

6

of seats similar to those that Mr. Caudill sat on while riding on train locomotives after which he was asked whether "vibration and jarring cause or contribute to cause injury to the spine through degeneration?" Dr. Tibbs responded affirmatively. Dr. Tibbs was then asked whether it is "generally accepted that riding in constrained and awkward postures for extended periods of time can cause or directly contribute to cause degenerative changes in the spine, also?" Dr. Tibbs answered, "[I]f that occurs over an extended period of time, yes, it's accepted." Dr. Tibbs's concluded that Mr. Caudill's spondylolisthesis was caused or directly contributed to by his work for CSXT.

On September 17, 2010, Mr. Caudill filed his FELA action against CSXT alleging that he suffered from spinal injuries caused by cumulative trauma during the course of his employment with CSXT. On January 27, 2012, CSXT filed a motion for summary judgment pursuant to Rule 56 of the West Virginia Rules of Civil Procedure[10] on the basis

---

[9](...continued)
caused by "a stress fracture - - in the adolescent or young adult spine[,]" which he described as the "major predisposing anatomical factor leading to spondylolisthesis at the L5-S1 level."

[10]    """"A motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law." Syllabus Point 3, *Aetna Casualty & Surety Co. v. Federal Insurance Co. of New York*, 148 W.Va. 160, 133 S.E.2d 770 (1963).' Syllabus Point 1, *Andrick v. Town of Buckhannon*, 187 W.Va. 706, 421 S.E.2d 247 (1992)." Syllabus Point 1, *Williams v. Precision Coil, Inc.*, 194 W.Va. 52, 459 S.E.2d 329 (1995).

(continued...)

that the complaint was filed more than three years after Mr. Caudill's FELA claim accrued and, thus, was barred by the FELA statute of limitations.

The circuit court held a hearing on CSXT's motion and, on February 27, 2012, entered an order granting the motion. The circuit court concluded that Mr. Caudill had "a long and documented history of back problems" for which he sought medical treatment beginning as early as 1985. The circuit court further found that although Mr. Caudill claimed he was unaware of his spinal injury until seeing Dr. Tibbs in 2008, Mr. Caudill himself had "linked his back problems with his employment conditions" and that, given his multiple complaints regarding the locomotive seats, "logic would dictate that he associated his back problems with the seats he complained of not supporting his back." Importantly, the circuit court also found that under federal law,[11] the fact that an injury has not reached its maximum severity does not relieve a plaintiff of the duty to use reasonable diligence to discover the injury and its cause. The circuit court concluded that the injury complained of in Mr. Caudill's September 2010 complaint "manifested itself well in excess of three years preceding that date[,]" and, in fact, had manifested "at the latest in November 2005."

---

[10](...continued)
Syl. Pt. 3, *Grayiel v. Appalachian Energy Partners 2001-D, LLP*, 230 W.Va. 91, 736 S.E.2d 91 (2012).

[11]The circuit court cited *Aparicio v. Norfolk & Western Railway Co.,* 84 F.3d 803 (6th Cir. 1996), *abrogated on other grounds by Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133 (2000), for this proposition.

8

On March 7, 2012, Mr. Caudill filed a motion to alter or amend the judgment pursuant to Rule 59(e) of the West Virginia Rules of Civil Procedure.[12] He argued that the circuit court did not have the benefit of the deposition of his family physician, Dr. Darnell, who allegedly testified that he "never even discussed musculoskeletal back problems" with Mr. Caudill in 2005.[13] On or about March 12, 2012, the circuit court entered an order denying Mr. Caudill's Rule 59(e) motion. The circuit court found that Dr. Darnell's deposition testimony "was not newly discovered evidence justifying a reconsideration of the Court's Final Order" nor did it "negate the remaining supporting evidence." The circuit court concluded that the "fact remains that [Mr. Caudill] reasonably should have known that his employment with [CSXT] contributed to his injuries." This appeal followed.

[12]In syllabus point 2 of *Mey v. Pep Boys–Manny, Moe & Jack*, 228 W.Va. 48, 717 S.E.2d 235 (2011), this Court said:

> A motion under Rule 59(e) of the *West Virginia Rules of Civil Procedure* should be granted where: (1) there is an intervening change in controlling law; (2) new evidence not previously available comes to light; (3) it becomes necessary to remedy a clear error of law or (4) to prevent obvious injustice.

[13]Upon careful review of that portion of Dr. Darnell's deposition to which Mr. Caudill refers, we find that, in fact, Dr. Darnell did *not* testify that "he never even discussed musculoskeletal back problems" with Mr. Caudill. Rather, Dr. Darnell testified that during a September 9, 2005, office visit with Mr. Caudill, his notes indicated that back problems were not listed for that particular visit. With that said, even if Mr. Caudill had accurately represented Dr. Darnell's testimony in this regard, and had that testimony been timely offered by Mr. Caudill in opposition to CSXT's motion for summary judgment, the fact remains that the medical records from Mr. Caudill's multiple visits to Dr. Darnell's office in November 2005 reflect that Mr. Caudill's back problems were in fact discussed. As set forth above, a November 2005 office visit led to Dr. Darnell ordering an x-ray of Mr. Caudill's lumbar spine.

9

## II. Standard of Review

At issue in this appeal is whether the circuit court properly denied Mr. Caudill's Rule 59(e) motion to alter or amend the circuit court's order granting summary judgment in favor of CSXT. This Court has held that

> "[t]he standard of review applicable to an appeal from a motion to alter or amend a judgment, made pursuant to W.Va. R.Civ.P. 59(e), is the same standard that would apply to the underlying judgment upon which the motion is based and from which the appeal to this Court is filed." Syl. Pt. 1, *Wickland v. American Travellers Life Ins. Co.*, 204 W.Va. 430, 513 S.E.2d 657 (1998).

Syl. Pt. 1, *Graham v. Beverage*, 211 W.Va. 466, 566 S.E.2d 603 (2002). Accordingly, we look to the standard of review applicable to summary judgments.

We stated in syllabus point one of *Painter v. Peavy*, 192 W.Va. 189, 451 S.E.2d 755 (1994), that "[a] circuit court's entry of summary judgment is reviewed *de novo*." As we further explained, "we . . . must draw any permissible inference from the underlying facts in the light most favorable to the party opposing the motion." *Id.* at 192, 451 S.E.2d at 758 (internal citations omitted). "Summary judgment is appropriate where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, such as where the nonmoving party has failed to make a sufficient showing on an essential element of the case that it has the burden to prove." *Id.*, Syl. Pt. 4.

With these standards in mind, the parties' arguments will be considered.

## III. Discussion

In addressing the issues raised in this appeal, we must look to the substantive law of federal courts:

> Pursuant to 45 U.S.C. § 56 (1948), federal and state courts have concurrent jurisdiction of claims brought under the Federal Employers' Liability Act, 45 U.S.C. § 51 (1939). Although a state court may use procedural rules applicable to civil actions in the state court unless otherwise directed by the Federal Employers' Liability Act, substantive issues under the Federal Employers' Liability Act are determined by the provisions of the statute and interpretative decisions of the Federal Employers' Liability Act given by the federal courts.

Syl. Pt. 4, *McGraw v. Norfolk & W. Ry. Co.*, 201 W.Va. 675, 500 S.E.2d 300 (1997). Both parties agree that the substantive issue in this appeal involves FELA's statute of limitations and whether Mr. Caudill's FELA action was timely filed.

Pursuant to 45 U.S.C. § 56, "[n]o action shall be maintained under [FELA] unless commenced within three years from the day the cause of action accrued." In syllabus point three of *Jordan v. Baltimore & O. R. Co.*, 135 W.Va. 183, 62 S.E.2d 806 (1950), we stated as follows:

> The provision of the Federal Employers' Liability Act, as amended, prescribing a period of three years after a cause of action accrues within which to commence an action covered by that statute relates to the right which it creates and the remedy which it provides; and an action based upon or within

11

the scope of the statute, which is not commenced within the three year period of limitation, can not be maintained.

A cause of action accrues under FELA when the plaintiff knows or should have known both of his injury and its cause. *See Mix v. Del. & Hudson Ry. Co.,* 345 F.3d 82 (2d Cir. 2003), *cert. denied*, 540 U.S. 1183 (2004). *See also Johnson v. Norfolk & Western Ry. Co.,* No. 92-1719, 1993 WL 17061, 985 F.2d 553 (Table) *20 (4th Cir. Jan. 28, 1993) (citing, in part, *Urie v. Thompson*, 337 U.S. 163 (1949)), *cert. denied*, 508 U.S. 972 (1993). Further, under FELA, the statute of limitation is not an affirmative defense; rather, it is a condition precedent to recovery. *See Emmons v. Southern Pacific Transp. Co.*, 701 F.2d 1112 (5th Cir. 1983) (compliance with 45 U.S.C. § 56 condition precedent to employee's recovery in FELA action) (citing *Gulf, Colorado & Santa Fe R.R. Co. v. McClelland*, 355 F.2d 196, 197 (5th Cir.1966)).


When, as in the case *sub judice*, a specific date of injury cannot be determined because an injury results from continual exposure to a harmful condition over a period of time, the discovery rule applies. *See United States v. Kubrick,* 444 U.S. 111 (1979). Although the *Kubrick* Court addressed a claim brought under the Federal Tort Claims Act, *Kubrick* and *Urie*[14] have been read together in the FELA context to mean that a claim does not accrue until a claimant knew, or in the exercise of reasonable diligence should have

---

[14]*Urie v. Thompson,* 337 U.S. 163 (1949).

known, of both the injury and its work-related cause. *See, e.g., Townley v. Norfolk & Western Ry.*, 887 F.2d 498, 500 (4th Cir. 1989).

In the case at bar, Mr. Caudill filed his FELA complaint on September 16, 2010. Accordingly, he had to prove that his injury accrued on or after September 16, 2007.

Turning to the parties' arguments, Mr. Caudill asserts that the accrual of FELA's limitation period is a question of fact for a jury and that the circuit court usurped the role of the jury as fact-finder and failed to consider the facts in a light most favorable to him, the nonmoving party.[15] He contends that he could not have reasonably known prior to his diagnosis by Dr. Tibbs in 2008 that there was a correlation between his back pain and the lack of ergonomic support in the locomotive seats. Mr. Caudill maintains that his intermittent back pain is insufficient support for a legal conclusion that the statute of limitations accrued on some earlier, unknown date. He further asserts that he never asked Dr. Darnell for the results of his back x-ray taken in November 2005, therefore, he was not

_____

[15]Mr. Caudill also argues that the policy rationale behind the relaxed causation standard for FELA actions, as set forth in *CSX Transportation, Inc. v. McBride*, _U.S._, 131 S.Ct. 2630, 2635 (2011), should extend to the consideration of CSXT's statute of limitations based summary judgment motion. CSXT responds that neither *McBride* nor FELA's statutory language offers any basis for applying a relaxed standard to elements other than causation. Even if we were to extend *McBride* in such a fashion, we would still conclude that under the facts of this case, there is no basis for a reasonable jury to find that Mr. Caudill's claim was timely filed.

aware that he had been diagnosed with "grade-1 anterolisthesis of L5 on S1 secondary to L5 bilateral spondylolysis" in 2005.[16]

CSXT maintains that the date a cause of action accrues can be a question for a jury or for a court depending upon the specific facts of each case. In the case *sub judice*, where the facts could not lead a rational trier of fact to find for the nonmoving party, this was properly a question for the circuit court. CSXT argues that a FELA plaintiff who experiences symptoms of an injury has a duty to investigate the injury and its possible cause. CSXT further argues that the test requires an "objective inquiry" into what a plaintiff "should have known, in the exercise of reasonable diligence." *Fries v. Chi. & Nw. Transp.*, 909 F.2d 1092, 1095 (7th Cir. 1990).

In *Fries*, the court explained that "upon experiencing a symptom[,] a plaintiff has a duty to investigate both the injury and any suspect cause." *Id.* at 1096. Further, FELA does not "allow a plaintiff to unilaterally postpone the running of the statute of limitations by negligently failing to investigate the fact of and cause of his injury." *Id.* at 1095-96 (citing *Kubrick*, 444 U.S. 111, 123). As the *Fries* court further explained:

---

[16]As previously stated, the radiological report from the MRI of Mr. Caudill's back taken in 2008 showed essentially the same findings as the x-ray taken in 2005: "chronic bilateral L5 spondylolysis with grade 1 anterolisthesis at L5-S1."

The Court held in *Kubrick* that a plaintiff must act diligently and cannot wait until the injury is actually made known to him by some unplanned incident, such as the unexpected medical diagnosis that occurred here. Rather, upon experiencing symptoms a plaintiff has a duty to investigate both the injury and any suspect cause. *Kubrick*, 444 U.S. at 123, 100 S.Ct. at 360. As the district court aptly stated, "[t]o allow a plaintiff to unilaterally postpone the running of the statute of limitations by negligently failing to investigate the fact of and cause of his injury would thwart the legislative intent of 45 U.S.C. § 56."

*Id.* at 1095 - 96. Following this same logic, in *Mix v. Delaware & Hudson Railway Co.*, 345 F.3d 82 (2d Cir. 2003), *cert. denied*, 540 U.S. 1183 (2004), the court stated as follows:

Regardless of whether he [Mix] received an actual diagnosis, undisputed facts indicate that Mix knew that he was having problems with his hearing. The fact that Mix may not have had actual knowledge of his medical diagnosis would not relieve him of his duty of exercising due diligence based upon strong indications that he did, in fact, have an injury.

*Id.* at 87.

Thus, even if we were to agree with Mr. Caudill's contention that he sued for spondylolisthesis, which was not diagnosed until 2008,[17] the fact remains that he experienced back pain as far back as 1985 and began receiving chiropractic treatment for his back pain in 2001. Moreover, by late 2005, Mr. Caudill's complaints were such that Dr. Darnell ordered an x-ray of his lumbar spine. Even Mr. Caudill's neurosurgeon, Dr. Tibbs, agreed that Mr. Caudill's symptoms "had been going on for at least five or seven years . . . [,]" by the time Dr. Tibbs saw him in 2008. Importantly, at the same time that Mr. Caudill is

---

[17]Again, we disagree with Mr. Caudill's position that spondylolisthesis was a new diagnosis. *See supra* n. 7.

experiencing back pain, he complained numerous times to railroad officials, trainmasters, and union officials about the seats on the locomotives.

Mr. Caudill endeavors to evade the statute of limitations by arguing that his family doctor, Dr. Darnell, never told him the results of his x-ray taken in 2005, and never told him that his back pain was work-related. By the same token, Mr. Caudill admittedly never followed up with Dr. Darnell concerning the results of his 2005 x-ray, and there is no indication in the record that he ever told Dr. Darnell, or any other healthcare provider, of his complaints that the unsupportive seats on the locomotives caused the jarring and vibration on the locomotives to "end up right in your back." Consequently, even if we were to accept Mr. Caudill's representation that he did not have actual knowledge of his medical diagnosis in 2005, the case law discussed herein is clear: Mr. Caudill had an affirmative duty to exercise due diligence because there were strong indications that he did, in fact, have an injury. *See Mix,* 345 F.3d 82.

Arguments similar to Mr. Caudill's have been raised by other FELA plaintiffs. For example, in *Tolston v. National Railroad Passenger Corp.*, 102 F.3d 863 (7th Cir. 1996), the court upheld the award of summary judgment in favor of the railroad on a statute of limitations basis. Tolston had a long history of knee pain during her employment with Amtrak, which required her to walk on uneven ground, climb on and off railcars, as well as to bend and stoop. Tolston finally had knee surgery in May 1992. Her surgeon, upon

16

learning of her job with Amtrak, opined that her knee problems might be associated with her employment. Tolston filed her FELA action in April 1995. In addressing the defendant's motion for summary judgment on the basis that the action was untimely filed, the court noted that Tolston endeavored to distinguish her case from *Fries* by arguing that she attributed her knee pain to ordinary wear and tear and being overweight. The *Tolston* court found this distinction to be unpersuasive and noted that, "[a]t some point, persons with degenerative conditions have a duty to investigate cause. *See, e.g.*, *Aparicio,* 84 F.3d at 814-15 (applying *Fries* to FELA claim based upon carpal tunnel syndrome)." *Id.* at 866. As the *Tolston* court explained:

> Following *Urie* and *Kubrick*, the *Fries* court summarized the rule for FELA cases as follows: "a cause of action accrues for statute of limitations purposes when a reasonable person knows or in the exercise of reasonable diligence should have known of both the injury and its governing cause." 909 F.2d at 1095. Both components, the court emphasized, require "an *objective inquiry* into when the plaintiff knew or should have known, in the exercise of reasonable diligence, the essential facts of injury and cause." *Id.* A plaintiff need not be sure which cause is predominant, as long as she knows or has reason to know of a potential cause. Just to be clear . . . this rule imposes on plaintiffs the affirmative duty to investigate the cause of a known injury.

*Id.* at 865 (emphasis added).


Similarly, in *Axe v. Norfolk Southern Railway Co.*, 972 N.E.2d 243 (Ill.App. Ct. 2012), Axe, a FELA plaintiff, had been seeing his treating physician for years for bilateral knee complaints. The court noted that Axe had not presented any evidence to show that he

had made any effort to learn the cause of the degenerative arthritis in his knees. Axe argued that the FELA statute of limitations did not begin to run because "not one medical record from [his] doctors even mentions that his conditions were related to his work on the railroad." *Id.* at 247. As the court noted, Axe did not believe that he bore any responsibility to seek out possible causes for his knee pain noting that he had not sought "any advice from anyone in the medical or legal community about the cause of his painful knee problem." *Id.* Relying, in part, upon both *Tolston* and *Fries*, the *Axe* court concluded that the trial court did not err in granting summary judgment in favor of the defendant railroad on the basis that the statute of limitations barred the cause of action, which was filed more than three years after, in the exercise of reasonable diligence, Axe should have known about the cause of his condition. *Id.* at 248. *See also McNutt v. CSX Transp., Inc.*, No. 3:08-CV-601-H, 2010 WL 1688788 (W.D. KY Apr. 26, 2010) (medical diagnosis not required for FELA plaintiff to reasonably know that injury possibly related to work; a plaintiff who has reason to suspect injury is work related must take steps to see whether it is); *Johnson*, 985 F.2d 553 (Table) *20 (4th Cir. Jan. 28, 1993) (plaintiff could not carry burden of proof that he filed lawsuit within three years of accrual of cause of action where action filed in 1988 but hearing problems began as early as 1979); *Reed v. CSX Transp., Inc.*, No. 93-1393, 1993 WL 475971, 12 F.3d 205 (Table) at *21 (4th Cir. Nov. 17, 1993) (cause of action untimely where FELA plaintiff knew he had hearing loss and only significant noise in life was employment with railroad, citing both *Fries* and *Kubrick* for proposition that FELA plaintiffs may not avoid statute of limitations by failing to seek diagnosis or investigate cause).

18

In applying these precepts to the case at bar, we also bear in mind that courts have said that the statute of limitations under FELA does not turn on a plaintiff's *subjective* knowledge, but on an *objective* inquiry into when a plaintiff knew or should have known, in the exercise of *reasonable diligence*, the critical facts of his injury and its cause. *See, e.g., Fries*, 909 F.2d at 1095 ("Both components require an objective inquiry into when the plaintiff knew or should have known, in the exercise of reasonable diligence, the essential facts of injury and cause."). Thus, we now hold that the statute of limitations under the Federal Employers' Liability Act, 45 U.S.C. § 56 (2006), requires an objective inquiry as to when a plaintiff knew or should have known, in the exercise of reasonable diligence, the facts of his or her injury and its cause. Accordingly, for purposes of the case at bar, we must objectively consider the facts to determine whether Mr. Caudill carried his burden of presenting sufficient evidence that he neither knew, nor should have known, that his back injury was related to his employment prior to September 16, 2007.

Our application of the principles outlined above to the question of when Mr. Caudill's action accrued dictates a finding that the statute of limitations expired, at the latest, in 2008, three years after he knew, or should have known in the exercise of reasonable diligence, of both his injury and its cause. Our review of the evidence demonstrates that Mr. Caudill had a long history of back pain; a history of seeking medical treatment for his back pain from both his family physician and chiropractors; and a history of complaining that the seats on the locomotives were unsupportive of his back in relation to the jarring and vibration

19

of the trains. The fact that his complaints were also made at union safety meetings clearly

signals that he considered the issue to be more serious than just personal comfort. Under

these facts, reasonable diligence should have led Mr. Caudill to the conclusion, long before

September 2007, that he had a work-related injury. To be clear, the injury forming the basis

of Mr. Caudill's claim was the same injury shown on his lumbar x-ray taken in November

2005.[18] Had he fulfilled his duty to investigate by consulting with a specialist in the early

2000s, or by following up with Dr. Darnell concerning the results of his 2005 x-ray, he would

have known of his injury, at the latest, in 2005.


As discussed, our research reveals that the question of whether a FELA claim

has been timely filed can either be a jury question or one appropriate for summary

disposition.[19] Indeed, as the cases cited herein demonstrate, each case turns on its own

---

[18]*See supra* n. 7.

[19]Although we are required to apply federal substantive law to the question of the timeliness of Mr. Caudill's claim, we note that he relies, in part, on *Gaither v. City Hospital, Inc.*, 199 W.Va. 706, 715, 487 S.E.2d 901, 910 (1997), in support of his argument that when he knew or should have known of his injury was a jury issue. In *Gaither*, we held that "the question of when plaintiff knows or in the exercise of reasonable diligence has reason to know of *medical malpractice* is for the jury." *Id.*, Syl. Pt. 4 (emphasis added). We also generally commented that "[*i*]*n the great majority of cases*, the issue of whether a claim is barred by the statute of limitations is a question of fact for the jury." *Id.* at 715, 487 S.E.2d at 910 (emphasis added). We had the opportunity to address this language in *Legg v. Rashid*, 222 W.Va. 169, 176, 663 S.E.2d 623, 630 (2008), wherein we stated, as follows:

In *Gaither*, this Court noted that "[i]n the great majority of cases, the issue of whether a claim is barred by the statute of limitations is a question of

(continued...)

20

particular set of facts. Having considered the relevant and undisputed facts in the case at bar in the light most favorable to Mr. Caudill, and applying the law cited herein to those facts, we find that Mr. Caudill failed to show that his cause of action accrued within three years of the filing of his FELA claim. Consequently, his cause of action was untimely filed under FELA and summary judgment was properly granted in favor of CSXT.

## IV. Conclusion

For the reasons set forth herein, the Court affirms the February 27, 2012, and March 2, 2012, orders of the Circuit Court of Mingo County, West Virginia.

Affirmed.

---

[19](...continued)
fact for the jury." 199 W.Va. at 714, 715, 487 S.E.2d at 909, 910. While many cases will require a jury to resolve the issue of when a plaintiff discovered his or her injury, including the related issue of whether the plaintiff was reasonably diligent in discovery of his or her injury, *the issue can also be resolved by the court where the relevant facts are undisputed and only one conclusion may be drawn from those facts. See Harrison v. Davis*, 197 W.Va. 651, 660, 478 S.E.2d 104, 113 (1996) (upholding trial court's decision that plaintiff failed to exercise reasonable diligence in discovering injuries); *Cathedral of Joy Baptist Church v. Village of Hazel Crest*, 22 F.3d 713, 719 (7th Cir.1994); *Witherell v. Weimer*, 85 Ill.2d 146, 52 Ill.Dec. 6, 421 N.E.2d 869, 874 (1981).

*Legg*, at 176, 663 S.E.2d at 630 (emphasis added). Accordingly, under state law, as well as federal law, the question of the timeliness of a claim can be decided by a court through summary judgment.